# WILSON, ALIAS CHARLES WILLARD, v. UNITED STATES.

# WILSON, ALIAS ZOE WILLARD, v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Nos. 168, 169. Submitted October 23, 1913.—Decided February 24, 1914.

The White-Slave Act of June 25, 1910, has been sustained as constitutional. *Hoke* v. *United States*, 227 U. S. 308.

Although the constitutional question on which a case has been brought to this court on direct writ of error has been decided since the writ of error was sued out, this court must retain jurisdiction for the purpose of passing upon the other questions in the record.

Under the White-Slave Act the prohibition is not in terms confined to transportation by common carrier, nor need such a limitation be implied in order to sustain the constitutionality of the act.

The White-Slave Act has the quality of a police regulation although enacted in the exercise of the power to regulate interstate commerce, and it is wholly within the power of Congress to determine whether the prohibition should extend to transportation by others than common carriers.

The agency of one employed to bring prostitutes from one State to another without definite instructions includes power to decide upon the mode and route of transportation.

The cross-examination of a defendant in regard to taking morphine *held* in this case to be proper as it related not to general character, but to the condition of the witness at the moment.

Cross-examination as to the domestic difficulties of one of two defendants married to each other *held* in this case to have been material in order to corroborate the evidence of an accomplice and in other respects relevant to the testimony in chief.

Cross-examination of a defendant in a white slave case in regard to payments made to police officers *held* in this case to have been com-

petent and material to show the character of the house occupied by defendants.

In this case *held* that the charge of the trial court in regard to presumptions of innocence of the accused and their right to acquittal in case of reasonable doubt was sufficiently favorable to the accused.

The offense under the White-Slave Act is complete when the transportation in interstate commerce has been accomplished. There is no *locus pœnitentiœ* thereafter.

THE facts, which involve the validity of convictions and sentences under the White-Slave Act, are stated in the opinion.

*Mr. Elijah N. Zoline* for plaintiffs in error:

There was no evidence supporting allegations in the indictment. It was error to subject the defendant Catherine Wilson to the cross-examination as to whether she is addicted to the use of drugs. There was error in the cross-examination of same defendant as to her domestic relations. There was error in permitting cross-examination of the defendant Charles Wilson upon entries relating to payment of money to certain police officers. There was error in instructing the jury on presumption of innocence and reasonable doubt. There was error in excluding from charge to jury the principle of *locus pœnitentiœ*. There was error in instructing the jury as to the weight of the evidence.

In support of these contentions, see *Atwood* v. *Impson*, 20 N. J. Eq. 157; *Brown* v. *State*, 16 S. W. Rep. (Miss.) 202; *Bucklin* v. *State*, 20 Oh. St. 18; *Burt* v. *State*, 16 S. W. Rep. (Miss.) 342; *Burton* v. *United States*, 196 U. S. 283; *Coffin* v. *United States*, 156 U. S. 432; *Commonwealth* v. *Churchill*, 11 Met. 538; *Commonwealth* v. *Webster*, 5 Cush. 295; *Cox* v. *People*, 82 Illinois, 191; *Dimick* v. *Downs*, 82 Illinois, 570; *Frazier* v. *State*, 117 Tennessee, 430; *Gilchrist* v. *M'Kee*, 4 Watts, 380; *Hoke* v. *United States*, 227 U. S. 308; *Horner* v. *United States*, 143 U. S. 570; *Johnson* v. *State*,

16 So. Rep. (Miss.) 494; *Keek* v. *United States*, 172 U. S. 445; *Kolb* v. *Union Railroad Co.*, 54 L. R. A. 646; *Metze* v. *Tuteur*, 77 Wisconsin, 243; *Miles* v. *United States*, 113 U. S. 304; *Moore* v. *Moore*, 73 Texas, 382; *People* v. *Murray*, 14 California, 159; *People* v. *Undung*, 108 California, 83; *Pinkard* v. *State*, 30 Georgia, 757; *Railroad Co.* v. *Gower*, 85 Tennessee, 473; *Rudsdill* v. *Slingerland*, 18 Minnesota, 380; *Spears* v. *Forrest*, 15 Vermont, 437; *Stabler* v. *Commonwealth*, 95 Pa. St. 318; *State* v. *Butler*, 26 W. Va. 90; *State* v. *Carson*, 66 Maine, 116; *State* v. *Hurley*, 79 Vermont, 28; *State* v. *King*, 88 Minnesota, 175; *State* v. *Smith*, 7 Vermont, 141; *Stephens* v. *State*, 107 Indiana, 185; *Thompson* v. *People*, 96 Illinois, 158; *Williamson* v. *United States*, 207 U. S. 425; *United States* v. *Stephens*, 8 Sawy. 116; Rapalje on Witnesses, § 197; Thompson, Trials, §§ 524, 525; Wharton, Ev., 3d ed., § 541; Wharton, Crim. Law (9th ed.), § 187.

*Mr. Assistant Attorney General Denison* for the United States.

MR. JUSTICE PITNEY delivered the opinion of the court.

This case comes here upon two separate writs of error allowed upon the same record, to review judgments of the District Court imposing fine and imprisonment upon each of the plaintiffs in error, upon their conviction on an indictment founded upon the act of Congress of June 25, 1910, commonly known as the White-Slave Act (36 Stat. 825, c. 395).

The case was brought directly to this court, because the constitutionality of the statute was drawn in question. This question has since been settled adversely to plaintiffs in error. *Hoke* v. *United States*, 227 U. S. 308. Nevertheless, we must retain jurisdiction for the purpose of passing upon the other questions in the record. *Horner*

v. *United States*, 143 U. S. 570, 576; *Burton* v. *United States*, 196 U. S. 283, 295; *Williamson* v. *United States*, 207 U. S. 425, 432.

There were numerous counts in the indictment, and a general verdict of guilty. The substance of the charge was that defendants caused and procured two girls to be transported in interstate commerce from Milwaukee, Wisconsin, to Chicago, Illinois, for the purpose of prostitution. There was also a count charging a conspiracy to commit the same offense. The theory of the Government, sufficiently stated in the indictment and supported by evidence at the trial, was that in pursuance of an understanding between defendants and a man named Corder, they gave him eleven dollars in money, with instructions to proceed from Chicago to Milwaukee, induce one or both of the girls to return with him to Chicago, paying their transportation and other expenses out of the eleven dollars, and bring them to a house of prostitution in the latter city kept by the defendants; and that Corder carried out these instructions to the letter, bringing both girls over an interstate electric railway line and escorting them to defendants' house for the purpose of prostitution.

Of the questions of law that are raised, only the following seem to require mention:

1. It is insisted that the offense was not fully proved because there was nothing to show that defendants either directed or knew how the girls were to come from Milwaukee to Chicago, whether in a private vehicle or through the instrumentality of a common carrier. But, in our opinion, in order to constitute an offense under the act it is not essential that the transportation be by common carrier. The statute reads: "That any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, in interstate or foreign commerce, . . . any woman or girl for the purpose of prostitution or debauchery, or

for any other immoral purpose, . . . or who shall knowingly procure or obtain, or cause to be procured or obtained, or aid or assist in procuring or obtaining, any ticket or tickets, or any form of transportation or evidence of the right thereto, to be used by any woman or girl in interstate or foreign commerce, . . . in going to any place for the purpose of prostitution or debauchery, or for any other immoral purpose, . . . whereby any such woman or girl shall be transported in interstate or foreign commerce, . . . shall be deemed guilty of a felony," etc.

The prohibition is not in terms confined to transportation by common carrier, nor need such a limitation be implied in order to sustain the constitutionality of the enactment. As has already been decided, it has the quality of a police regulation, although enacted in the exercise of the power to regulate interstate commerce (*Hoke* v. *United States*, 227 U. S. 308, 323; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 215); and since this power is complete in itself, it was discretionary with Congress whether the prohibition should be extended to transportation by others than common carriers.

The contention that defendants were not within the prohibition of the act because they did not control or instruct Corder in the choice of means of conveyance is not worthy of serious consideration. According to the Government's evidence, Corder was employed by defendants as their agent, and furnished by them with money sufficient for the expenses of the transportation, but without definite instructions as to what mode should be employed. A natural inference was that he should decide upon the mode and select the route; and that such selection was within the scope of his agency.

2. The female defendant offered herself as a witness, and in the course of her cross-examination was asked whether she was addicted to the use of morphine. Having

admitted this, and stated that she had last used it before coming into the court room that morning at ten o'clock, she was asked how often she used it, and whether she had with her the "implements" with which to "take the dose." She replied in the affirmative. This line of examination was excepted to, and is assigned for error on the ground that she had not put her character at issue. But as we read the record, the evidence was not offered or admitted for its bearing upon her character, but rather to show that she was so much addicted to the use of the drug that the question whether at the moment of testifying she was under its influence, or had recovered from the effects of its last administration, had a material bearing upon her reliability as a witness. It seems to us that in this aspect the evidence was admissible. *People v. Webster,* 139 N. Y. 73, 87; *State v. White,* 10 Washington, 611, 613.

3. Error is assigned upon certain rulings of the trial court permitting cross-examination of the same witness, tending to show that she and the other defendant lived unhappily as husband and wife, were occasionally separated, and (as is said) that they at times indulged in the use of pistols. No evidence was in fact offered or admitted tending to show that weapons had been used, if we except. an obscure allusion to "pistols" in a letter that had been written by a person in New York City to the female defendant in Chicago. The use made of this letter was permissible for other reasons. The evidence as to the quarrels and separation was plainly admissible. The Government's case depended mainly upon the testimony of Corder. He appeared to have been an accomplice, hence circumstantial corroboration of his story was especially material. He had testified that Mrs. Wilson asked him to go to Milwaukee for the purpose of getting the two girls, and had mentioned as a circumstance that this conversation took place at the Union Depot in Chicago, where he had met Mrs. Wilson at her request

to aid her in a search for her husband. On her direct examination, she flatly denied this, saying: "I did not take him and he never accompanied me on any trip to hunt for Mr. Wilson; I always knew where Mr. Wilson was." The cross-examination under consideration was entirely relevant to this part of the testimony in chief.

4. It is assigned for error that the court permitted the Government to cross-examine the defendant, Charles Wilson, respecting entries made by him and his wife in their books of account, showing payments of money to certain police officers, and indicating friendly relations, if not coöperation, between defendants, as keepers of a house of prostitution, and members of the police force. This was not objected to as exceeding the limits of proper cross-examination, but only as being "incompetent, irrelevant and immaterial." We think it was admissible as tending to show the character of the house, and as tending to rebut evidence previously introduced by the defense to the effect that Mrs. Wilson had refused to harbor the girls for fear of police interference.

5. Error is assigned upon the instructions of the trial court to the jury respecting the presumption of innocence, and the definition of reasonable doubt. Counsel for defendants preferred no request upon either subject previous to the delivery of the charge. The court instructed the jury in substance that the arrest of defendants, their indictment by the grand jury, and their arraignment, were no evidence whatever of their guilt; that the presumption of innocence meant that at the beginning of the trial they were as innocent of the charges as any man in the jury-box; that this presumption continued to abide with the defendants as a complete protection, unless and until it gave way because inconsistent with the existence of a situation proved by the evidence in the case beyond all reasonable doubt; that by that [reasonable doubt] was meant, not the frame of mind of a man endeavoring to

find a way out for somebody accused of crime, not a mere capricious doubt, not a frame of mind suggested by something occurring in the trial of the case or in the argument of counsel not based on evidence in the case; but that "reasonable doubt is that frame of mind which forbids you to say, all the evidence considered and weighed, 'I have an abiding conviction of the defendants' guilt,' or as it has been expressed, 'I am convinced of the defendants' guilt to a moral certainty.' If you can say that you have such a conviction, then you have no reasonable doubt, and your verdict should be guilty. On the contrary, if that is your frame of mind, if you are in the frame of mind where if it was a matter of importance to you in your own affairs, away from here, you would pause and hesitate, before acting, then you have a reasonable doubt." At the conclusion of the charge counsel for defendants said: "I should like that the court say a little more on the reasonable doubt, as I believe it was limited only to a moral certainty. That is the only sentence I heard about that." The argument here is that the instruction as given is faulty, because the court did not tell the jury that the Government must prove its case against defendants beyond a reasonable doubt. As we read the charge, it meant nothing less than that, and was sufficiently favorable to defendants. *Miles* v. *United States*, 103 U. S. 304, 309, 312; *Hopt* v. *Utah*, 120 U. S. 430, 439, 440; *Dunbar* v. *United States*, 156 U. S. 185, 199; *Coffin* v. *United States*, 156 U. S. 432, 460; *Cochran* v. *United States*, 157 U. S. 286, 299; *Davis* v. *United States*, 160 U. S. 469, 487; *Allen* v. *United States*, 164 U. S. 492, 500; *Dunlop* v. *United States*, 165 U. S. 486, 502.

6. Error is assigned because the court refused to charge the jury, as requested, to the effect that if they should believe from the evidence that defendants, after the girls came to Chicago from Milwaukee, refused to accept them, and voluntarily abandoned their evil intention and re-

fused to carry out the illegal purpose, no offense against the laws of the United States was committed. It is argued that the end and object of the act is to prevent immorality and trafficking in girls, and not the mere act of transportation. But we think that by the plain language of the statute, the offense is complete when "any such woman or girl shall be transported in interstate or foreign commerce, or in any Territory or the District of Columbia" as a result of any of the criminal acts previously described. The suggestion that the law contemplates a *locus pœnitentiæ* for defendant, after the journey is ended and the woman or girl has been brought to the intended destination within the walls of a house of prostitution, is obviously untenable.

We find no error in the record.

*Judgments affirmed.*