## GOWLING v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. December 6, 1920.)

No. 3540.

1. **Prostitution ⬅1—Under White Slave Traffic Act, transportation need not be by common carrier.**

   To constitute the offense of transporting a woman in interstate commerce for immoral purposes, under White Slave Traffic Act, § 2 (Comp. St. § 8813), it is not essential that the transportation be by a common carrier.

2. **Criminal law ⬅1166½ (12)—Question by court, at once withdrawn, not prejudicial.**

   A question and remark addressed by the court to a witness *held* not prejudicial to defendant; where, on attention being called to it, the court stated that it misunderstood the witness, withdrew the remark, and ordered the question stricken out.

3. **Prostitution ⬅4—Evidence admissible in prosecution for violation of White Slave Traffic Act.**

   In a prosecution for violation of the White Slave Traffic Act (Comp, St. §§ 8812–8819), by transporting a woman from one state into another lor the purpose of illicit intercourse, evidence is admissible which tends to show that defendant is the father of a child of the woman.

4. **Criminal law ⬅1171 (1)—Remarks of counsel not prejudicial.**

   Remarks made by the district attorney in argument cannot be held to have prejudiced the jury against defendant, where his counsel, while objecting generally, stated that he did not know to what they referred.

5. **Criminal law ⬅778 (4)—Instruction as to presumption of innocence.**

   A correct instruction respecting the presumption of innocence *held* not rendered erroneous because it stated that the law "in its charity" raised such presumption.

In Error to the District Court of the United States for the Northern Division of the Northern District of California; William C. Van Fleet, Judge.

Criminal prosecution by the United States against William E. Gowling. Judgment of conviction, and defendant brings error. Affirmed.

Frank A. Duryea, of San Francisco, Cal., for plaintiff in error.

Frank M. Silva, U. S. Atty., and Wilford H. Tully, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Gowling was convicted under an indictment of five counts, the first of which charged that he willfully and feloniously transported and aided and assisted in transporting in interstate commerce from Reno, Nev., to Sloat, Cal., by means of an automobile running over the public highways of the United States, the automobile being driven and controlled by Gowling, Mrs. M. Northcutt, otherwise known as Mrs. W. E. Gowling, for a certain immoral purpose, debauchery. The counts vary only in the allegation of the purpose of the alleged transportation.

[1] A general and special demurrer was overruled, and the action of the court is assigned as error. The argument is that the indict-

ment fails to allege that the alleged transportation was in interstate commerce, within the meaning and intent of the act of Congress of June 25, 1910 (Comp. St. §§ 8812–8819), for the prevention of white slave traffic. But as the indictment charges that the defendant transported and aided and assisted in transporting the woman in interstate commerce in and by means of a certain automobile running over the public highways of the United States, the automobile then and there being in such transportation, and operated and controlled by the defendant, it is sufficient. In Wilson v. United States, 232 U. S. 563, 34 Sup. Ct. 347, 58 L. Ed. 728, the Supreme Court held that it is not essential in order to constitute the offense that the transportation be by common carrier; the court saying:

"The prohibition is not in terms confined to transportation by common carrier, nor need such limitation be implied * * * to sustain the constitutionality of the enactment. As has already been decided, it has the quality of a police regulation, although enacted in the exercise of the power to regulate interstate commerce (Hoke v. United States, 227 U. S. 308, 323; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 215); and since this power is complete in itself, it was discretionary with Congress whether the prohibition should be extended to transportation by others than common carriers."

We think the allegations of the indictment are too plain to call for further discussion. Caminetti v. United States, 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

Passing to the other more important assignments, we will take them up in the order in which they are presented by the brief of plaintiff in error.

[2] A witness, in testifying for the defendant, said that he knew the reputation of defendant in the place in which he' had lived. The court asked whether defendant had lived there long enough to acquire a general reputation in the neighborhood. Witness replied: "Yes, sir; it was a small place." The court then said: "A small reputation or a small place?" The witness replied, "A small place, Mr. Duryea." Counsel for defendant objected and noted an exception. The court then said:

"Let that question be stricken out. I misunderstood the witness. The remark will be withdrawn."

The prompt statement by the judge that he had misunderstood the witness, and the direction that the question and remark were withdrawn, removed any possible prejudice to the rights of the defendant on trial.

[3] It appears that C. A. Northcutt, husband of the Mrs. Northcutt named in the indictment, testified that he had two children, while Mrs. Northcutt testified that she and Northcutt were married April 12, 1911, and had three children; the youngest born April 6, 1918. She said that she and her husband lived together for about 3 weeks immediately prior to July 28, 1917, when he went abroad. Northcutt testified that he had been away for about 20 months at war, and that he had last seen his wife July 28, 1917, and that the last child was

born April 6, 1918; that he had not seen his wife from July 28, 1917, to January 25, 1919. These dates presented a question of the legitimacy of the infant. The court declined to permit the child to be brought into the presence of the jury, and overruled the motion of the defendant to strike out the testimony bearing upon the legitimacy of the last child. The court stated that there was nothing to strike out, that the testimony had gone in without objection by the defendant, and that there was no legal objection to evidence tending to show that Northcutt was not the father of the child. We think that the court was right, for, as said by the judge, while the legitimacy of the child was not the issue involved, the case being one between the government and the defendant, it was competent for the prosecution to prove, if it could, that the defendant was the father of the infant. Melvin v. Melvin, 58 N. H. 569, 42 Am. Rep. 605; Greenleaf on Evidence, § 28.

[4] In his argument to the jury the district attorney referred to a matter which had occurred on the trial as one of the cleverest things done by the defendant during the trial, "except one that the law forbids me to mention, gentlemen of the jury." Counsel for defendant at once excepted to the remark of counsel for the government. Thereupon the following colloquy occurred:

"The Court: What remark?

"Mr. Duryea: Referring to the matter he was forbidden to mention before the jury.

"The Court: What does he refer to? ·

"Mr. Duryea: I do not know, but I think it is a remark that is detrimental to the defendant in this case.

"The Court: You must explain it yourself, so that I can understand you.

"Mr. Duryea: If counsel knows of something he does not dare refer to—

"The Court: I do not understand your reasoning myself.

"Mr. Duryea: I don't know what he means myself."

Thereupon counsel for the government proceeded and commented upon the attitude of the defendant "in hiding behind the skirts" of Mrs. Northcutt, and leaving her "alone to bear the brunt of this whole proposition on the witness stand alone." Again counsel for defendant objected, "as subversive of the interests of the defendant." The court stated that counsel for the prosecution had a reasonable limit of comment and asked what the objection was. Counsel replied: "The statement that the defendant left her to bear the brunt alone." The court then said: "If you will suggest what it refers to, I will be able to rule on it"—and referred to the facts that Mrs. Northcutt was put upon the stand in behalf of defendant and that there were other witnesses in the case. The court then said: "There were other witnesses, Mr. Johnson. You do not mean that she was left as the sole witness." Mr. Johnson: "Not as the sole witness in the case; no." Thereupon the court told the jury that the matter was argument by counsel, and that no unfavorable deductions could be drawn from anything that counsel said, which would in any way reflect upon the case of the defendant. Thereupon the argument was proceeded with.

We do not see how error can be predicated upon the remark of the district attorney. Counsel now argues that it is apparent that the prosecuting attorney referred to the fact that the defendant did not testify and that the jury could have understood nothing else; but, as the quotation from the record discloses that counsel for defendant stated he did not know what counsel for the government meant by the remark objected to, and as he did not suggest to the court that it was evident counsel meant to comment upon the failure of the defendant to testify, counsel should not now be heard to say that the language had a meaning which counsel for defendant was not able to give to it at the time of the trial. In Wilson v. United States, 149 U. S. 60, 13 Sup. Ct. 765, 37 L. Ed. 650, the district attorney, in summing up the case, commented upon the failure of the defendant to testify by stating that if he were charged with a crime he would not stop by putting witnesses on the stand to testify to his good character, but would go upon the stand and hold up his hand before high Heaven and testify to his innocence of the crime. The court's attention was called to the language of the district attorney, exception was preserved, and the court said that "he supposed counsel should not comment upon the defendant not taking the stand." The Supreme Court reversed the conviction upon the ground that the district attorney had intimated to the jury, as plainly as if he had said in so many words, that the circumstance referred to operated against the innocence of the defendant, and that the remark of the court to the effect that he supposed counsel should not comment upon the defendant not taking the stand conveyed the impression to the minds of the jury that, if defendant were an innocent man, he would have gone on the stand as the district attorney stated he himself would have done. There was no room for doubt of the meaning of counsel or court in that case, but here counsel for the defendant stated that he did not know what the language of the district attorney meant.

It is said that the court erred, in that it charged the jury to the effect that the defendant could be convicted if it were found that he had committed the offense of persuading, inducing, or enticing the woman to be transported, and that conviction could be had if defendant had committed the acts denounced in sections 3 and 4 of the act of Congress referred to. Of course, if the jury were instructed that conviction could be had under sections of the act not involved in the indictment under which defendant was tried, the conviction would be illegal; but a reading of the whole charge makes it clear that the court limited the statement of the offense with which defendant was charged to the allegations made under section 2 of the statute. In general explanation of the purpose of Congress in the enactment of the whole legislation upon the white slave traffic, the court referred to the several sections as evidence of the comprehensive nature of the statute, but specifically limited the jury to the consideration of the question of guilt or innocence of the crime charged, which was violation of section 2.

It is said that the court in its instructions assumed that the evidence showed that immoral relations had existed between the defend-

ant and Mrs. Northcutt after the alleged transportation from Nevada to California, if not before. When the instructions are considered as a whole, we do not find the argument to be well grounded. Whether there were immoral relations between defendant and Mrs. Northcutt was necessarily a part of the case, and it was entirely proper for the court to state to the jury what rules of law were pertinent, in the event that it was proven to their satisfaction that illicit relations had existed..

[5] The court stated the principle of the presumption of innocence, by saying that the law "in its charity" presumes the innocence of the defendant, and that such presumption abides with him throughout the trial and until his guilt is established by the evidence. There was an exception to the statement that the law "in its charity" presumed the defendant to be innocent. We cannot perceive that the force of the principle was lessened by the observation that the law "in its charity" established the maxim. The humane fundamental rule was in itself clearly stated.

Plaintiff in error objects to the refusal of the court to give instructions to the effect that Mrs. Northcutt had a right to establish a home in California or elsewhere, and that the jury should consider such circumstances in connection with all the evidence in the case. The charge of the court fully covered the duty of the jury in the consideration of all the testimony introduced before them, and it was not error to refuse to point out a single circumstance.

Other assignments have been carefully examined, and are not of substantial merit.

We find no ground for reversal, and affirm the judgment.