## UNITED STATES v. BREEN et al.*
### No. 200.

Circuit Court of Appeals, Second Circuit.

May 9, 1938.

David V. Cahill, of New York City, for appellants.

Lamar Hardy, U. S. Atty., of New York City (Francis A. Mahony, Asst. U. S. Atty., and Frederick Backer, Sp. Asst. U. S. Atty., both of New York City, of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellants are a father and son who, with four others, were indicted by the grand jury for the Southern District of New York. The indictment charged them in each of four counts with the violation of 18 U.S.C.A. § 80, and in a fifth count

*Writ of certiorari denied 58 S.Ct. 1061, 82 L.Ed. —.

with conspiracy so to do in violation of 18 U.S.C.A. § 88. There was a severance as to one of those indicted. The others were tried together; the two appellants being found guilty by the jury on each count and sentenced; the jury disagreeing as to each of the other defendants.

The appellants now seek reversal because they say the judge erroneously denied a motion to dismiss the indictment at the close of all the evidence. That has been briefed as though it were a motion for a directed verdict and we will so treat it. Reversible error is also claimed because of the definition of reasonable doubt given in the charge; because of the conduct of the judge during the trial; and because of the admission of certain evidence.

Section 80 of title 18 U.S.C.A. provides in so far as now material that: "Whoever shall knowingly and willfully * * * make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, in any matter within the jurisdiction of any department or agency of the United States" shall be punished as therein provided.

There was ample evidence to justify the jury in finding beyond a reasonable doubt that these appellants caused the Breen Contracting Company, a corporation of which appellant Joseph Breen was the president, to submit bids in 1935 for the furnishing to the Treasury Department of the United States, Procurement Division, of trucks and compressors for use on projects of the Works Progress Administration in or about New York City. Three of these bids were accepted and one contract was executed on August 1, 1935. Two other contracts were executed on September 3, 1935. Under them, the Breen Contracting Company agreed to furnish the trucks and compressors as they might be ordered at a stated price per day which included employees who were to be paid wages by the corporation at a specified rate. The jury was also justified in finding by the same measure of proof that appellants submitted or caused to be submitted for the corporation false vouchers, certificates, or affidavits to the United States Treasury Department for the purpose of obtaining, and on which there was obtained, payment under these contracts by knowingly and falsely representing that the corporation had paid its employees the wages as agreed which were higher than those in fact paid them; and by knowingly and falsely representing that more dynamite had been used than actually had been.

There was also ample evidence to justify the jury in finding that government officials began an investigation of the manner of the performance of these contracts by the Breen Contracting Company and the way in which payments under them had been received which caused appellant Michael F. Breen, Sr., to arrange for the award of such contracts in 1936 to the Breen Renting Corporation, of which he was president, instead of to the Breen Contracting Company, by representing to government officials that his son Joseph who was suspected of irregularities would be no longer in charge. Between January and April 1, 1936, six contracts for supplying equipment for projects of the Works Progress Administration similar to those the Breen Contracting Company had had in 1935 were entered into by the Breen Renting Corporation. False vouchers and certificates were signed by Michael F. Breen, Sr., as president, and submitted to the Treasury Department on which the Breen Renting Corporation was paid.

It is argued that, because Michael F. Breen, Sr., was an old man who had become rather inactive in business, it was not proved to the requisite degree of certainty in a criminal case that he knew the vouchers and certificates which he signed were false. On the evidence, however, that was fairly a jury question. He knew that suspicion at least had been directed toward the Breen Contracting Company the previous year in respect to its vouchers and certificates. The jury could well find that he had undertaken, when there was danger that the Breen Contracting Company would at least lose the chance to bid successfully on future business and the Breen Renting Corporation became a successful bidder, to attend to such matters himself; and that he was so familiar with what was going on that he did know just what he was doing when he signed and caused the false statements to be submitted as the basis for payments to be received. There was also some evidence that the Breen Renting Corporation was paid by the government for the use of trucks on a private job of its own, upon certificates the appellants caused to be submitted, but no reliance need be put upon that now as the

other evidence is quite sufficient to require the holding that it was not error to submit the case to the jury since there was substantial evidence in support of the verdict. Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173.

Nor can it be said justly that the attempted definition of "reasonable doubt" by the trial judge was prejudicial to either appellant. The principal fault found with it now is that he said it was something to be "distinguished from an ordinary doubt" and confused the jury. The simple fact is that the term "reasonable doubt" is so largely self-defining that attempts to use language from which the jury will get a clearer understanding of what it means than the words themselves convey may often be futile. And, because that is so, an attempted explanation which leaves reasonable doubt at the end still reasonable doubt, cannot be prejudicial. This charge, read as a whole as it should be, did not make reasonable doubt some extraordinary thing whose meaning the jurors could not comprehend as the appellants now argue. On the contrary, no juror of average intelligence could help but have known who had the burden, and what was the correct measure of proof. Their trial counsel was apparently of that opinion, for no exception was taken to what was said about reasonable doubt. As all the rights of the appellants were protected, the language used is of minor importance and gives no cause for reversal. Wilson v. United States, 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728; Mansfield v. United States, 8 Cir., 76 F.2d 224; United States v. Woods, 2 Cir., 66 F.2d 262.

The rather severe criticism in the appellant's brief of the conduct of the judge during the trial is unwarranted. He did examine witnesses at some length and perhaps was too active at that to be really helpful but that is far from saying that he did anything which prejudiced the appellants. He had the right to examine witnesses. Hargrove v. United States, 8 Cir., 25 F.2d 258. All too often, it seems, appellants like these become overcritical of a trial judge after conviction and on appeal seek to try him instead of the merits or demerits of their cause. See Goldstein v. United States, 8 Cir., 63 F.2d 609.

It is argued that Joseph Breen especially was prejudiced because the judge asked him if several witnesses named, who had testified that they had been paid less than he said they had, testified falsely and he replied in each instance that they had. He paid them and presumably knew how much. They were paid and presumably knew what they received. His contradiction of their testimony was practically tantamount to giving them the lie. That the court later gave him the opportunity which he took to do that directly did not legally prejudice him. It may have helped him by showing clearly the sharp conflict in the evidence on a point essential to the government's case; or it may have hurt such chances of acquittal, if any, as he then had, for it did emphasize the fact that his credibility was being put to the test against that of several. But, however that may have been, the judge might lawfully ask the questions and so there was no error.

The exceptions taken to the admission of certain evidence have been examined but are all too frivolous for other comment than that neither singly nor all together do they afford any cause for reversal. See, Williams v. United States, 8 Cir., 265 F. 625.

Judgment affirmed.

MANTON, Circuit Judge (dissenting).

The evidence against Michael F. Breen, father of Joseph Breen, did not justify the submission of his guilt to the jury. His acquittal should have been directed.

The evidence against Joseph Breen was indeed of little probative force. His conviction, I think, was due to errors committed on the trial. The learned trial judge's definition and explanation of the doctrine of reasonable doubt was confusing, erroneous, and prejudicial. While Joseph Breen was testifying in his own defense, he was erroneously called upon to characterize as false the testimony of some 28 former employees who testified as to their wages at the trial. This was under the cross-examination of the learned trial judge.

For these reasons both convictions should be reversed.