**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William Samuel COLE, Defendant-Appellant (two cases).**

**Nos. 26513, 26568.**

United States Court of Appeals, Ninth Circuit.

April 4, 1972.

Rehearing Denied May 9, 1972.

David Yamakawa, Jr. (argued), San Francisco, Cal., for defendant-appellant.

Charles Pinnell, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before DUNIWAY and TRASK, Circuit Judges, and LUCAS, District Judge.*

TRASK, Circuit Judge:

These two related cases are direct appeals from convictions for violations of the narcotics laws following jury trials in the district court. In Number 26,513, Cole was convicted of conspiring with Kinnear and Miller to sell, deliver and dispose of a depressant or stimulant drug (methamphetamine) in violation of 21 U.S.C. §§ 331(q) (2), and 360a(b). In Number 26,568, Cole was convicted of conspiring with Shockley and Patton to manufacture, compound, process and deliver methamphetamine in violation of 21 U.S.C. §§ 331(q), 360a(a), and 360a(b). Counsel in both cases are the same, they were argued at the same time and will be considered together here.

### Facts in Number 26,513

On April 10, 1969, Special Agent Shoaf of the Bureau of Narcotics and Dangerous Drugs pretending to be a drug dealer interested in purchasing methamphetamine, contacted Thomas Kinnear. He told Kinnear that he wanted to deal directly with Cole and that he was prepared to purchase $200 worth of methamphetamine at that time. Kinnear agreed and telephoned Cole to make arrangements. Pursuant to the arrangement made, Shoaf went to a designated restaurant. Kinnear brought the drug to him. Finding some flecks in it, he used this as a pretext to talk directly with Cole about the transaction. Cole explained that it was the best that could be obtained in Seattle. After some discussion Agent Shoaf then handed Cole $200 for the methamphetamine.

Following this sale, Agent Shoaf contacted Mrs. Miller on several occasions to arrange further drug purchases from Cole. On April 21, 1969 he made arrangements with Mrs. Miller to purchase

---

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

one pound of methamphetamine for $1000. She stated she would have it in one hour and then made arrangements with Cole for delivery. Shoaf went to the Miller residence where shortly after, Cole and Kinnear drove up. Cole walked to the basement while Kinnear delivered the drug to Shoaf upstairs and was paid the $1000 for it. Kinnear then went to the basement and gave Cole the money and saw Cole give some of it to Mrs. Miller. Shoaf found the quantity of methamphetamine to be approximately 25 grams short and there were further conversations with Cole, Mrs. Miller and Kinnear resulting in Cole's agreement to make up the shortage which was done through Mr. Kinnear.

### Defendant's Claims

██ Kinnear changed his plea and testified as the first witness for the government. Appellant sought to exclude his testimony because he was an admitted heroin addict. The court denied the request noting that as the court observed the witness on the stand he appeared to be perfectly normal. Cross-examination on this addiction was permitted, but a defense request for a physical examination was denied as well as a request that the jury examine his needle scars. Where, as here, the appearance of the witness is not abnormal and he is lucid in responding to questions and no evidence is introduced of mental impairment, the trial court's discretion in limiting cross-examination and the other efforts at impeachment on this collateral matter, will not be disturbed. Kelly v. Maryland Cas. Co., 45 F.2d 782 (W.D. Va.1929), aff'd 45 F.2d 788 (4th Cir. 1930).

Appellant relies on Wilson v. United States, 232 U.S. 563, 34 S.Ct. 347, 58 L. Ed. 728 (1914), and Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (D.C.Cir.1966). In *Wilson,* a defendant-witness was asked upon cross-examination about her addiction to morphine. There was no request to have her examined or to display scars upon her person. Likewise cross-examination was permitted here. In *Hansford,* a defendant pleaded insanity as a defense. He was shown to have been an addict. He was also shown to have been committed to a mental hospital for examination, although the report was negative for mental disorder. He was a lifelong drug user. He admitted he had been using narcotics throughout the trial even at noon recess. There was psychiatric testimony as to the extent of his mental deterioration and his competency even to stand trial. Such is not this case, nor is the avowal of counsel such as to bring this case within *Wilson* or *Hansford.*

██ Appellant also urged that the court erred in the denial of his motion to inspect all written statements or confessions or admissions. The only record was contained in the agents' case reports. Rule 16(b) Fed.R.Crim.P. excepts these reports from the Rule.[1] Although other courts have appeared to hold to the contrary, United States v. Cook, 432 F.2d 1093 (7th Cir. 1970), cert. denied, 401 U.S. 996, 91 S.Ct. 1224, 28 L.Ed.2d 535 (1971), we have adhered to the majority rule that the production of memoranda of government agents of a defendant's statements may not be compelled although their production should be permitted rather freely. Loux v. United States, 389 F.2d 911, 922 (9th

---

1. "Except as provided in subdivision (a) (2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government ex-

cept as provided in 18 U.S.C. § 3500." Brief for Appellee at 7.

The appellant requested all written or recorded statements or confessions made by each of the defendants, including any summary of any or all statements. The government responded that the sole record of such statements or conversations was contained in the agents' case reports which provided a synopsis of what happened.

Cir.), cert. denied, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968). There is no reason to depart from that rule here.

The final argument of the appellant is addressed to the insufficiency of the evidence. The facts we have related concerning this incident, about which there seems to be little conflict, clearly establish this argument as insubstantial. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The judgment of conviction in Number 26,513 must be affirmed.

The principal contention as to the sufficiency of the evidence in Number 26,513 was whether it would support a conviction for conspiracy. Kinnear testified there was no formal agreement between Cole, Miller and Kinnear but upon objection from the defendant was not allowed to testify as to any informal agreement, the court observing that this was for the jury. The jury was carefully instructed on conspiracy and no exception taken in this court. The evidence disclosed that Mrs. Miller was Cole's mother-in-law. She was the agent's contact for purchases from Cole along with Kinnear. Meetings were arranged in Mrs. Miller's house, Kinnear and Cole arrived together and Cole went to the basement while Kinnear made the delivery upstairs. The money was then taken to the basement where Cole gave part to Miller. This and other evidence was sufficient to permit the court to submit the issue to the jury. It found for the government.

### Facts in Number 26,568

In this companion case for conspiracy to manufacture and dispose of methamphetamine in violation of 21 U.S.C. § 331, appellant Cole was found guilty after jury trial and sentenced to 18 months imprisonment to be served concurrently with his prior sentence in Number 26,-513. The principal figure in this conspiracy was Arthur Shockley, who with Aubrey Horne represented the manufacturing part of the conspiracy, while Cole and one Patrick Patton were responsible for distribution. Both Horne and Kin-near, one of Cole's salesmen, testified that Cole and Shockley had a fifty-fifty partnership. Horne obtained his information about the manufacturing operation directly from Shockley and Kinnear's source of information was Cole. In addition, Horne watched Shockley manufacture about three pounds of methamphetamine on one occasion, and on another was present when Cole appeared where Shockley was manufacturing and picked up approximately one pound of methamphetamine stating that he had people waiting. There is no doubt about proof of the manufacturing operation. Business was good. The documentation of the conspiracy was filled out with testimony of other witnesses. The appellant's reply brief does not contest the accuracy of the facts, but attacks the government's action in breaking what he would call one large conspiracy into two smaller ones, e. g., a manufacturing conspiracy and a sales conspiracy, and indicting Cole separately on each. It is asserted that this constitutes Double Jeopardy.

Cole was a key figure in both the conspiracy regarding the manufacture of methamphetamine which is the subject of this case, and he is also the central character in the Cole-Miller-Kinnear sales conspiracy from which Agent Shoaf made his purchases. This does not necessarily make the two conspiracies one.

The agreement with Shockley and Horne was that they should produce the drug and Cole and Horne should dispose of it. But his arrangement with Miller and Kinnear could have been entirely different and apart. There was no showing that Shockley and Horne knew Cole was using his mother-in-law and her residence and Kinnear as a team for his own distribution. Cole might well have had other sources of supply in addition to the Shockley-Horne production. There are strong indications in the record that he did. The indictment of Cole in Number 26,523 was for a conspiracy beginning April 1969, with Louise Miller and Thomas Kinnear and

continuing until the indictment was filed in September. The overt acts established sales in April 1969.

 The indictment for manufacturing, charging a conspiracy between Shockley, Cole and Patton, covered a period from December 1968, through September 30, 1969. The witness Kinnear testified that while Cole purchased methamphetamine from Shockley during that period, the partnership between Shockley and Cole began in September 1969.[2] Prior to that Shockley had had other partnerships including one with Patton. The jury could well have believed therefore that the conspiracy between Miller, Cole and Kinnear for sale of methamphetamine in April was for a drug manufactured by Shockley and perhaps others, but that Cole was not a partner with Shockley until September 1969. There is actually no positive identification of the source of the methamphetamine which Mrs. Miller arranged for Cole and Kinnear to obtain and sell in April 1969. Moreover, Cole might have had two "arrangements." He could have been paying Shockley one agreed disposal price and having his mother-in-law resell at a higher price. Certainly the people in the two operations were entirely dissimilar. In United States v. De-Sapio, 299 F.Supp. 436, 441 (S.D.N.Y. 1969), the court, relying upon an earlier decision of the Court of Appeals of the Second Circuit,[3] held that offenses are not the same for purposes of double jeopardy because they arise out of the same general course of criminal conduct, but only when the evidence required to support a conviction of one would suffice to warrant a conviction upon the other. Here, clearly the evidence in Number 26,513 of the sale could never have convicted for manufacture and the reverse is true. Two substantive criminal offenses were involved. One prohibited the "manufacture, compounding, or processing of a drug in violation of section 511(a) [of the Federal Food, Drug & Cosmetic Act (21 U.S.C. § 331)] . . ." and the other prohibited "the sale, delivery or other disposition of a drug in violation of section 511(b) . . . ." Drug Abuse Control Amendment of 1965, § 5, Pub.L.No. 89–74, 79 Stat. 226, repealed by Comprehensive Drug Abuse Prevention & Control Act of 1970, § 701(a), Pub.L.No. 91–513, 84 Stat. 1236. Both the people involved and the activities involved in the manufacturing process were different from those in the selling—except for Cole. The fact that there is one individual common to two separate criminal enterprises does not constitute them a single operation. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

The judgment of conviction in Number 26,568 is affirmed.

---

2. No. 26,568, R.T. at 164.

3. United States v. Kramer, 289 F.2d 909, 913 (2d Cir. 1961).