IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 2, 2016

**IN RE: M. D.**

**Appeal from the Circuit Court for Jackson County**
**No. 13CV25    Clara W. Byrd, Judge**

---

**No. M2015-01023-COA-R3-JV-Filed September 30, 2016**

---

This appeal arises from a finding of dependency and neglect. The Tennessee Department of Children's Services ("DCS") filed a petition alleging that M. D. ("the Child") was dependent and neglected based upon alleged sexual abuse by her father, D. D. ("Father"). The Child's mother, S. D. ("Mother"), filed a cross-petition to intervene, and she sides with DCS on appeal. After a trial, the Circuit Court for Jackson County ("the Trial Court") found the Child to be both dependent and neglected and a victim of severe abuse by Father. Father appeals to this Court. We find and hold that the evidence does not preponderate against the findings of the Trial Court, and the evidence rises to the standard of clear and convincing to prove the Child is dependent and neglected, as well as a victim of severe abuse. We further find no reversible error in the Trial Court's considering Father's drug use and troublesome courtroom behavior in assessing his credibility. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ., joined.

Cindy Howell Morgan, Sparta, Tennessee, for the appellant, D. D.

Mark E. Tribble, Cookeville, Tennessee, for the appellee, S. D.

Herbert H. Slatery, III, Attorney General and Reporter, and, Martha A. Campbell, Deputy Attorney General, for the appellee, the Tennessee Department of Children's Services.

# OPINION

## Background

The Child was born to Mother and Father in 2008. Mother and Father divorced in 2011, and their parenting plan provided that they would each have the Child for two days at a time. The arrangement briefly went well. However, in 2011, DCS investigated Father based upon allegations that he exposed the Child to drugs. Mother suspected that Father was abusing the Child. In 2012, Annette Gallardo ("Gallardo"), a licensed professional counselor, assessed the Child. The Child at that time made no disclosures of abuse. That November, DCS received a referral regarding Father's alleged sexual abuse of the Child. The Child disclosed that Father had touched her private area in inappropriate ways. The Child's step-grandmother made the referral. After this referral, the Child underwent a physical, which was inconclusive as to sexual abuse. A DCS investigator, Kim Pierce, arranged for the Child to undergo a forensic interview. Jennifer Wilkerson, Executive Director of the Upper Cumberland Child Advocacy Center, conducted the forensic interview, which was recorded on video tape. For his part, Father underwent a psychosexual evaluation, which deemed him to be at low risk of sexual offending. This evaluation, however, consisted largely of questioning requiring honest responses from Father. DCS filed a petition in November 2012 alleging that the Child was dependent and neglected, as well as a victim of severe abuse by Father.

The Juvenile Court for Jackson County found the Child dependent and neglected in June 2013. Father appealed to the Trial Court for a *de novo* trial. The Trial Court conducted the trial over the course of one day in July 2014, and two days in January 2015.

Gallardo, the professional counselor who worked with the Child, testified by deposition that on November 30, 2012, the Child went further into detail about the sexual abuse. However, we do not deem it necessary to describe those details for purposes of this opinion.

The Child's step-grandmother testified that the Child stated to her that Father touched her in various inappropriate ways. The step-grandmother knew the Child made this statement on December 3, 2012, because it was her step-daughter's birthday. The grandmother acknowledged not liking Father because, according to her, she knew "he sold drugs."

Melissa Spaulding ("Spaulding") testified as an expert in psychotherapy with children with trauma. Spaulding had been seeing the Child since January 2014.

-2-

Spaulding testified that the Child asserted that Father performed various inappropriate sexual acts with the Child.

Father testified. Father takes significant prescription drug medication related to serious problems with his neck and shoulder which had required surgery. Father takes, among other things, 15 milligrams of Oxycodone four times a day, one milligram of Xanax four times a day, and Lyrica three times a day for fibromyalgia. Father had been receiving social security disability since 2012. Father adamantly denied ever sexual abusing the Child.

In March 2015, the Trial Court entered its final judgment finding and holding the Child to be dependent and neglected as well as a victim of severe abuse by Father. The Trial Court stated in relevant part:

The Court has heard this case over the course of three days, July 14, 2014, January 27, 2015 and January 29, 2015. Prior the July 14, 2014 hearing [sic], and at the request of all counsel and with the assistance of all counsel, the Court viewed the DVD that contained the forensic interview of [the Child]. That interview was done on November 7, 2012 by forensic interviewer Jennifer Wilkerson at the Child Advocacy Center. In that interview, the Court observed the child, [the Child], who was four (4) years old. The Court did not personally see the child except for the DVD. . . The child used age-appropriate descriptions of body parts. . . [She described how her father touched her private area in inappropriate ways, and she also touched his.] [1] At one point towards the end she said, "Don't say a word to my daddy. He'll be mad." The child also disclosed that someone named [C.] or Uncle [C.] had touched her. The Court finds that the child was being truthful and that her further disclosures that were made after the forensic interview were also truthful and do not mean that the child was being deceitful in her forensic interview.

The Court then heard testimony from Melissa Spaulding, the child's counselor, who saw the child seventeen (17) times from January 14, 2014 to the present. The Court finds that Ms. Spaulding was credible in her testimony about [the Child] specifically and about children who have been abused generally. Ms. Spaulding testified about [the Child's] coping mechanisms and the therapy that she was doing with [the Child] to help her cope and teach her to calm down from her fears.

---

[1] We deem it unnecessary for purposes of this opinion to recount verbatim the Trial Court's graphic findings as to the disclosed abuse, and this sentence is our summary of those findings.

The Court reviewed the transcript of the deposition of Annette Gallardo, another counselor whom the child saw prior to seeing Melissa Spaulding. The child opened up to Ms. Gallardo about her abuse including that her father had her perform oral sex on him and it choked her.

The Court also heard from the CPS case manager, Kim Pierce. Ms. Pierce had been in both homes and most of the referrals to DCS arose out of the fact that [Father] takes prescription medication.

The Court finds that [Father] is on prescription drugs, that he regularly takes oxycodone and xanax, and that at the time of the sexual abuse referral, he was also taking morphine. The Court is convinced that [Father] is addicted to prescription drugs. His behavior on January 27, 2015 was very bizarre. The Court was concerned that he was not going to be able to get home and suggested that he have someone else drive him home. [Father] insisted that he was sober, but he was a risk to himself and others. He was stumbling trying to get to the witness stand. On that day he testified that he did not have any drugs and that was why he was acting that way. If [Father] cannot drive after taking his drugs, and if his conduct on January 27, 2015 is the way that he acts when he is sober then he is in bad shape.

The Court finds that, as a result of all of the medications that [Father] has had, he does not remember significant events, i.e., when he got divorced, when he had a surgery, when he had the medication, what year the DCS case began, what year he separated from his wife, and what year his Social Security Disability was approved. He has no independent recollection of significant factors in his life and has to depend upon others to tell him where he was on a certain date at a certain time. Based upon his testimony, [Father] cannot be relied upon to self-report anything.

Jerri Cross performed a psychosexual evaluation at the request of Judge Gipson, Judge of the Juvenile Court of Jackson County, Tennessee. The Court cannot find that the evaluation was of any value to this Court because most of the areas of the evaluation depended upon the credibility of the person being evaluated. [Father], according to his own testimony, has no recollection. While [Father] has denied the allegations made by the child, the truth is that he does not know. He has had multiple surgeries; he has been on oxycodone, xanax, and morphine. He does not seem to have any memory of what happens from one day to the next when he is on that medication.

The Court finds by clear and convincing evidence that this four-year-old could not make up these allegations. She has been consistent in the fact that her father has inappropriately touched her. At times she has

come out with additional facts, but that does not mean that the child was not being truthful.

The Court finds by clear and convincing evidence that [Father] has a drug addiction problem. The Court finds by clear and convincing evidence pursuant to TCA 37-1-129 (a) (2), that this child is a victim of severe abuse, as defined in TCA 37-1-102(21); that it was perpetrated by [Father], and that pursuant to TCA 37-1-130 (d) and TCA 37-1-167, the Court shall not return the child, who is the victim of severe child abuse, to the perpetrator of that abuse until the Court receives clear and convincing evidence that the child will be safe from further brutality or abuse and that the threat to the child's safety no longer exists.

The Court further finds that it is in the best interest of said child and the public as follows, and

It is therefore **ORDERED** for disposition that the mother shall retain temporary legal custody along with the authority to consent fully to all the medical, surgical, hospital, institutional care, counseling, educational enrollment, and all other matters pending further orders of the Juvenile Court.

It is **FURTHER ORDERED:**

1. DCS shall not be required to make any further Reasonable Efforts pursuant to Tenn. Code Ann. § 37-1-166(g)(4)(A) due to the parent, [Father], subjecting the child to aggravated circumstances as defined by Tenn. Code Ann. § 36-1-102.

2. There shall be no visitation between the child and [Father] until such time as the Juvenile Court is presented with clear and convincing evidence that this child will be safe from any further abuse or drug-exposed conduct.

Father timely appealed to this Court.

### Discussion

Although not stated exactly as such, Father raises the following issues on appeal: 1) whether the Trial Court erred in finding that clear and convincing evidence established that the Child was dependent and neglected, as well as a victim of severe abuse; and, 2) whether the Trial Court erred in considering Father's use of prescription drugs in reaching its finding as to severe abuse.

This Court has outlined the standard of review in dependency and neglect and cases of severe child abuse as follows:

A child who is suffering from abuse is a dependent and neglected child. *See* Tenn. Code Ann. § 37-1-102(12)(G). A determination that a child is dependent and neglected must be supported by clear and convincing evidence. *See* Tenn. Code Ann. § 37-1-129(a)(1) & (c). Severe child abuse in a dependency and neglect proceeding must also be established by clear and convincing evidence. *In re S.J.*, 387 S.W.3d 576, 591 (Tenn. Ct. App. 2012).

The "clear and convincing evidence standard" is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *In re C.W. W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000). The clear and convincing evidence standard defies precise definition. *Majors v. Smith*, 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989). Evidence satisfying this high standard produces a firm belief or conviction regarding the truth of facts sought to be established. *In re C.W.W.*, 37 S.W.3d at 474. Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 n. 3 (Tenn. 1992).

Our review of the trial court's determinations on questions of fact is de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Whether a child has been proven dependent and neglected by clear and convincing evidence is a question of law which we review de novo without a presumption of correctness. *In re H.L.F.*, 297 S.W.3d 223, 233 (Tenn. Ct. App. 2009). To the extent the trial court's determinations rest upon an assessment of the credibility of witnesses, the determinations will not be overturned absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*In re: Kaitlynne D.*, No. M2013-00546-COA-R3-JV, 2014 WL 2168515, at *1-2 (Tenn. Ct. App. May 21, 2014), *no appl. perm. appeal filed*.

The first issue we address is whether the Trial Court erred in finding that clear and convincing evidence established that the Child was dependent and neglected, as well as a victim of severe abuse by Father. Father's argument may be consolidated as follows: (1) that the individuals reporting the disclosures are biased or otherwise predisposed to believe the allegations against Father and, therefore, not credible; (2) that the Child's accounts of sexual abuse were inconsistent over a long period of time; and (3)

that witnesses testified that the Child behaved normally around Father and, indeed, seemed to enjoy being around both parents.

The evidence in the record on appeal is that the Child made disclosures of sexual abuse by Father from 2012 onward. Although the exact vocabulary and level of detail changed, the basic factual allegations of sexual abuse persisted. Moreover, the Child's later descriptions tended to become more detailed, rather than tending to contradict her earlier descriptions. Any inconsistency in the Child's disclosures of sexual abuse was in her exact relating of what happened, not whether actions amounting to sexual abuse occurred at all. Father notes the Child once made manifestly false allegations that Father broke into their house, and this false allegation undermines the credibility of the Child's other allegations against Father. However, we, as did the Trial Court, do not believe that a child's making a false allegation in one separate instance necessarily serves to negate a body of consistent allegations of sexual abuse.

As to the alleged bias of those adults relating the Child's behaviors and disclosures, Father points to no evidence in the record that the Child had been coached in any way. Father, for instance, cites the step-grandmother's animosity toward Father. This animosity is not irrelevant as such, but neither is it tantamount to the Child's being coached.

Finally, Father points to the Child's behavior, which he characterizes as normal with respect to him. While the record contains some testimony that the Child was not afraid of Father or other men, it also contains evidence to the contrary, notably from the step-grandmother.

The Trial Court is the arbiter of witness credibility of those who testify live before it. As our Supreme Court has instructed:

> When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)). Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary. *Wells v. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011).

The Trial Court made specific credibility determinations as to the witnesses that testified live. We find no clear and convincing evidence contrary to the Trial Court's credibility determinations as to those witnesses, including Father. We find and hold that the evidence does not preponderate against the findings of the Trial Court, quoted above, and this evidence taken together arises to the standard of clear and convincing so as to establish, as found by the Trial Court, that the Child is dependent and neglected, as well as a victim of severe abuse by Father.

The next and final issue we address is whether the Trial Court erred in considering Father's use of prescription drugs in reaching its finding as to severe abuse. The Trial Court, in its final judgment as quoted above, did consider Father's use of prescription drugs when declining to credit his testimony. If the Trial Court simply had relied upon Father's prescription drug use to establish that he had sexually abused the Child, then, of course, that would be wildly improper. However, the Trial Court did not do that. Rather, the Trial Court instead rendered a credibility determination based upon Father's in-court demeanor and the effect of Father's drug use on him, including his memory. The Supreme Court of Rhode Island discussed the impact of witness drug use, persuasively, as follows:

> Generally, "[e]vidence of intoxication is admissible for the purpose of attacking the credibility of a witness and to test his competency, his ability to perceive and remember and to communicate the subject matter of his testimony." *State v. Ahmadjian*, 438 A.2d 1070, 1088 (R.I. 1981). A witness's intoxication while testifying strikes at the very core of his or her credibility and the reliability of the testimony. Alcohol and drugs may directly implicate the person's ability to recall the events to which he or she testifies. *See Wilson v. United States*, 232 U.S. 563, 567-68, 34 S.Ct. 347, 58 L.Ed. 728 (1914); 81 Am.Jur.2d *Witnesses* § 872 at 717 (1992) (noting that a present lack of sobriety "tends to discredit [a witness's] testimony because it involves a diminution of his trustworthiness in respect to his present ability to recollect and communicate"). Beyond that, intoxication at the time of testifying could also detract from a witness's ability to appreciate his or her sworn obligation to tell the truth. Thus, current intoxication is a potent, and relevant, topic for cross-examination. *See United States v. Banks*, 520 F.2d 627, 631 (7th Cir. 1975). Drug addiction and treatment in general, however, are improper topics for cross-examination "without also showing how that specific information would

affect [the witness's] credibility." *Commonwealth v. Adrey,* 376 Mass. 747, 383 N.E.2d 1110, 1112 (1978).

*State v. D'Alessio*, 848 A.2d 1118, 1124-25 (R.I. 2004).

Most critically, it was the Trial Court's prerogative to determine Father's credibility. This power is not limited to taking into account only witness drug use while testifying, but also may include other relevant factors such as a witness being unable to recall events that occurred while the witness was under the influence of those drugs. When hearing and perceiving the witness testify, trial courts in Tennessee are afforded considerable deference as to their witness credibility determinations. Father has pointed to no evidence that is clear and convincing that would serve to overturn the Trial Court's determination that he lacked credibility. We affirm the judgment of the Trial Court in its entirety.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, D. D., and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE