## CHOLAKOS v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 5, 1924.)

No. 4072.

**1. Prostitution ⬥1—Under White Slave Traffic Act, prostitution within state unnecessary.**

Under White Slave Traffic Act, § 2 (Comp. St. § 8813), if defendant furnished girl when outside the state with money for her transportation into the state for the purpose of prostitution, it was immaterial whether or not she engaged in prostitution after she reached the state.

**2. Prostitution ⬥1—Use for transportation of particular money furnished in violation of White Slave Traffic Act immaterial.**

Whether a girl, furnished money by defendant for her transportation from one state into another for immoral purposes, in violation of White Slave Traffic Act, § 2 (Comp. St. § 8813), used the identical money received for the transportation, is immaterial to the question of defendant's guilt.

**3. Prostitution ⬥5—Instructions held not erroneous in prosecution for violation of White Slave Traffic Act.**

Instructions in a prosecution for violation of White Slave Traffic Act (Comp. St. §§ 8812–8819) considered, and *held* sufficient, and not erroneous.

In Error to the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Criminal prosecution by the United States against Nick Cholakos. Judgment of conviction, and defendant brings error. Affirmed.

Walter D. Meals, of Cleveland, Ohio (Reed, Meals, Orgill & Maschke, of Cleveland, Ohio, on the brief), for plaintiff in error.

Fred S. Day, Asst. U. S. Atty., of Cleveland, Ohio (A. E. Bernsteen and M. A. McCormack, both of Cleveland, Ohio, on the brief), for the United States.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error was convicted of violating White Slave Act (Act June 25, 1910, c. 395) § 2 (U. S. Comp. Stat. § 8813); the specific charge being that he aided and assisted in obtaining transportation in interstate commerce for Edna Hanshaw Edens, from Covington, Ky., to Lorain, Ohio, for the purpose of prostitution and debauchery and other immoral purposes; more in detail, that he telegraphed the girl $15 at Covington, with the intent and purpose that she should use the money to obtain transportation from Covington to Lorain, there to engage in prostitution and debauchery, and to aid and assist her in obtaining such transportation, and that by the use of the money the girl obtained the transportation for the purpose stated.

Plaintiff in error kept a rooming house for men at Lorain. Previous to the alleged transportation, the girl had spent several months in this rooming house during two or more separate periods. She testified she was there as a commercial prostitute, sharing with plaintiff in error the avails of her prostitution; also that she had sexual relations with him. He denied both of these allegations, and says she was there as a chambermaid; he paying her as such. She testified that shortly before the alleged transportation plaintiff in error wrote, asking her to come back; that she wrote him she would, if he would send her the money, and wired him to

send her $15 by Western Union, and that he did so. Plaintiff in error admits receiving her telegram and wiring the money, but denies that he wrote her or that he received her letter. She testified she used the money for transportation expenses from Covington to Lorain, and that on reaching the latter place—apparently about three weeks after the money was wired—she resumed prostitution at the rooming house, sharing with plaintiff in error the money so acquired, and, inferably at least, that she continued such relations until she and plaintiff in error were arrested, which seems to have been several weeks later.

Plaintiff in error denied that the money was sent for such transportation or for an immoral purpose, as well as knowledge that she intended to or did engage in prostitution. There was testimony tending to corroborate the testimony of each of these two persons. The assignments of error presented are aimed solely at the charge of the court.[1] The girl did not go directly from Covington to Lorain. She went first into West Virginia, where she remained for a time, going thence to Cleveland (where she stayed at least a couple of days), and from there to Lorain, having married one Stanley in Cleveland on the day she went to Lorain.

[1, 2] 1. In the course of the charge the court said, in substance, that if defendant furnished the girl, when outside of Ohio, the means of transportation into that state, thereby inducing her to make the trip for the purpose charged, it would be immaterial whether the prostitution took place after she reached Ohio. This instruction correctly stated the law. Wilson v. United States, 232 U. S. 563, 570, 34 S. Ct. 347, 58 L. Ed. 728; Rizzo v. United States (C. C. A. 3) 275 F. 51. And cf. Athanasaw v. United States, 227 U. S. 326, 33 S. Ct. 285, 57 L. Ed. 528, Ann. Cas. 1913E, 911. Whether she used the specific bills paid her by the telegraph company is not important.

[3] 2. The argument that under the charge plaintiff in error might have been convicted if the girl came into Ohio merely to shop

or to marry Stanley is without force, especially in view of the instructions given when exception was taken to the portion of the charge just referred to. The jury was told, not only that, if there was evidence tending to prove that the girl "crossed the state line, not with the purpose of going to Lorain, but with the purpose of meeting Stanley, and that this was the inducing motive," defendant ought not to be convicted, but also that, if the testimony regarding her meeting Stanley in Cleveland raised a reasonable doubt that the inducement which brought her to the state was the action of plaintiff in error, he should be acquitted. The facts which the government was required to prove were in that connection re-enumerated: "That the defendant sent her the money to induce her to come, and to assist her to come, for immoral purposes, and that, but for that money, she would not have come, and that, with the assistance of that money, she did come." Counsel for plaintiff in error stated that he did not object to the instruction last mentioned.[2] These instructions were a sufficient compliance with the request for instruction for defendant, if the girl's sole reason for coming to Ohio was to marry Stanley, and answer the criticism upon the reference in the charge to defendant's purpose in sending her the money as "practically * * * the one disputed question of fact."

We have not discussed all the criticisms made by plaintiff in error, but have carefully considered all of them, and find no reversible error. We think plaintiff in error has had a fair trial, and we find nothing to indicate a miscarriage of justice.

The judgment of the District Court is affirmed.

---

[1] In brief of counsel it is said that verdict should have been directed for plaintiff in error. This cannot be considered. not only was no motion to that effect made, but there was substantial testimony sustaining the Government's case; and we cannot weigh conflicting testimony or pass on the credibility of witnesses. Burton v. United States, 202 U. S. 344, 373, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Kelly v. United States (C. C. A. 6) 258 F. 392, 406, 169 C. C. A. 408.

[2] The jury was still further instructed that, if the girl used the money having in mind an entirely different purpose from the purpose which actuated the defendant, and came over into this state with a definite purpose of what she was going to do, that was independent of getting in touch with defendant, he could not be held here, and specifically that, if she crossed the state line for no other purpose than to marry some one else, he could not be held for that, even though she would not have come otherwise than by getting the money, and, further, that if plaintiff in error had the purpose, and the money brought her over here, and she made the trip under the influence of defendant's purpose and through the defendant's inducement, and would not have come otherwise, "but she got across into the state of Ohio under that condition," what she did afterwards, by way of changing her mind, would not affect defendant's guilt. To these instructions, also, counsel for plaintiff in error announced that he took no exception.