## Commonwealth *v.* Gatto, Appellant.

Argued October 25, 1943. Before KELLER, P. J.,

BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

*S. Maxwell Flitter*, for appellant.

*Irving W. Coleman*, with him *Clyde W. Teel*, Assistant District Attorneys, and *Henry K. Van Sickle*, District Attorney, for appellee.

OPINION BY KENWORTHEY, J., December 10, 1943:

Appellant was convicted of pandering and knowingly accepting bawd money. Act of 1939, June 24, P. L. 872 §§513, 515, 18 PS §§4513, 4515. This appeal brings up for consideration the sufficiency of the evidence to sustain the convictions and the correctness of several rulings of the trial judge.

Jennie Celli, alias Mary Brands, has been convicted of like offenses relating to the same bawdy house—520 Pine Street, Easton,—and her conviction upheld in an opinion reported at 153 Pa. Superior Ct. 88, 33 A. (2d) 97. The commonwealth's theory was that appellant also had a proprietary interest in the establishment, that out of weekly levies on the inmates he was paid to furnish "protection" to the enterprise, and that, on several occasions—this, in support of the pandering charge—he had persuaded a prostitute to remain at work in the house.

Appellant lived with Mary Brands. He was in and

out of 520 Pine Street daily and he knew full well the kind of business that was being conducted. There was direct evidence that after a police raid he, by his assurance there would be no more trouble, persuaded one of the prostitutes to return to the establishment and remain at work. This was sufficient to support the conviction of pandering.[1] There was direct evidence that a weekly deduction was made from the earnings of each inmate for police protection. There was no direct evidence the money was paid over to appellant. But the proof was supplied out of appellant's own mouth. He told one of the inmates, "After all, you are paying $5.00 a week protection and I am here to back you and any girls in my places are always known to get out of any trouble that arises ...... anybody who paid him $5.00 a week for protection were always taken care of" and, "Don't worry, as long as I have received your protection money, nothing will happen; you leave everything in my hands and don't worry." Although the Act of Assembly provides that the offense is committed only when the proceeds from the earnings of a prostitute are received "without consideration" it is not suggested appellant's service of corrupting the police was a "consideration" within the contemplation of the act. In our opinion the evidence indicated appellant was virtually a partner in the business.

Appellant complains that prejudicial evidence of certain collateral matters was erroneously introduced by the commonwealth. A witness was permitted to testify that he had boasted to her that the proprietor of another bawdy house "had an awful hard time to open up his place but as soon as he was on the John Gatto payroll,

---

[1] The Act provides: "Whoever ...... by promise, threat, violence, or by any device or scheme, causes, induces, persuades, encourages, inveigles, or entices an inmate of a house of prostitution or place of assignation to remain therein as such inmate, ...... is guilty of pandering ......"

since he is on the John Gatto payroll, he is running now." This same witness was permitted to describe a conversation between appellant and another inmate of the house who was compelled to quit because of illness. She asked appellant if she might return to work and was told by him that he could not take her back at 520 Pine Street because he had enough girls there, but that he would try to place her elsewhere. The objection was on the ground the evidence introduced offenses wholly unrelated to those on which appellant was being tried. But the evidence was admissible to show appellant's criminal design and the extent of his interest in 520 Pine Street. *Com. v. Elias & Johns,* 76 Pa. Superior Ct. 576; *Com. v. Apriceno,* 131 Pa. Superior Ct. 158, 198 A. 515. Minor irrelevancies crept in. We have considered all those about which complaint is made. In our opinion, they were harmless. See *Short v. Allegheny Trust Co.,* 330 Pa. 55, 59, 198 A. 793. There was evidence relevant only to the charge of accepting bawd money. The jury were carefully instructed to so regard it. *Com. v. Fugmann,* 330 Pa. 4, 18, 198 A. 99.

Appellant complains of the court's refusal to withdraw a juror because of a statement by the assistant district attorney in his speech to the jury that, "This man is the man behind the gun, the king-pin." Although these figures of speech may have been somewhat intemperate, the manner of dealing with matters of this sort is largely discretionary with the trial judge. And the words painted a picture of appellant scarcely more derogatory than the evidence did. See *Com. v. Crittenton,* 326 Pa. 25, 191 A. 358, where the subject is discussed at length.

The case was submitted to the jury in a charge which was adequate and fair. Only a general exception was taken. The assignments are without merit.

The assignments are overruled and the judgments affirmed and defendant is directed to appear in the court below at such time as he may be there called and

that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeals were made a supersedeas.