Commonwealth *v.* Spallone, Appellant (No. 1).

Argued October 26, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

*Lewis R. Long,* for appellant.

*Irving W. Coleman,* with him *Clyde W. Teel* and *Jacob A. Raub,* Assistant District Attorneys, and *Henry K. Van Sickle,* District Attorney, for appellee.

OPINION BY KENWORTHEY, J., January 27, 1944:
Appellant was tried and convicted of knowingly ac-

cepting money out of the earnings of Janette Rogers, alias Irene Strowe, and Chiquita Gomez, women engaged in prostitution. Act of 1939, June 24, P. L. 872 §515, 18 PS §4515. The appeal challenges the sufficiency of the evidence to sustain the conviction, raises several procedural questions and complains of the adequacy of the court's charge to the jury.

The commonwealth sought to prove its case by showing that the women were prostitutes working in a bawdy house at 521 Pine Street, Easton, and that appellant was the proprietor or had a proprietary interest in the place. The first step—that the girls worked there as prostitutes—was shown by the testimony of the girls themselves corroborated by several witnesses. The evidence of appellant's proprietary interest was largely circumstantial. Obviously, if appellant had a proprietary interest, the commonwealth's case was complete; it has not been, and scarcely could be, argued that the proprietor of such a house must be shown to have actually received the proceeds from the earnings of the prostitutes working there; that fact may be presumed.

We think the evidence was amply sufficient. Betty Kugler, the madam of the bawdy house, lived with appellant, together with several of his relatives, in a large house owned by him on Bushkill Drive in Easton. An effort was made to prove that she merely rented an apartment, but this was largely a pretense. The fact was that she occupied rooms near appellant's and separated only by a bathroom; there was no evidence the house was divided into apartments. There was evidence that after the bawdy house was raided appellant paid off one of the prostitutes and directed another to go to Betty Kugler for her money. Appellant contends this was the *only* evidence of appellant's proprietorship. There was much more. A confessed panderer, Bassetti, testified that in the latter part of December 1941 he called appellant on the telephone from Wilkes-Barre

and asked him if he could use his girl at 521 Pine Street. Appellant told him that he could, whereupon Bassetti brought the girl there, and she worked there until the raid. Apparently Bassetti saw quite a good deal of appellant and on a subsequent occasion, after the girl had been an inmate of the house for several days, a conversation took place in which Bassetti asked appellant whether the girl was satisfactory and appellant replied that she was. There was evidence that at a New Year's Eve party given by appellant there was a conversation in which appellant made the statement that he had been unable to open the house at 521 Pine Street until he had obtained the consent of John Gatto.[1] There was evidence that, subsequent to the raid and immediately following their release, the inmates of the house went to appellant's home on Bushkill Drive and that there took place a conversation or argument between appellant and Bassetti from which an inference could very properly be drawn that appellant had put up the bail for his girl and was demanding that he be repaid at least a part of it. In our opinion, these circumstances were sufficient to support the conviction. Appellant's demurrer was properly overruled.

The remaining contentions are likewise without merit. We shall discuss them briefly.

The information recited that defendant aided and abetted *and* unlawfully and knowingly accepted money from the proceeds of the earnings of *any* woman engaged in the practice of prostitution. A motion was made to quash the indictment on the ground that, in supplying the names of the women, it went further than the information and on the further ground that the information charged appellant with being an aider and abetter only. "It is not necessary that an information

---

[1] There was evidence produced at the trial of Gatto that he had boasted of this fact. See *Com. v. Gatto*, 154 Pa. Superior Ct. 25, 34 A. (2d) 840,

should charge the crime with the same detail and technical accuracy required in an indictment, if the essential elements of the offense are set forth in terms of common parlance the information will be held to be sufficient." *Com. v. Dingman,* 26 Pa. Superior Ct. 615, 619. We have expressly held that where the information, though failing to identify persons, puts a defendant on notice of the substance of the crime for which he is being held, an indictment may include the names of the persons. *Com. v. Gouger,* 21 Pa. Superior Ct. 217, 233. The argument that the information did not charge appellant with a substantive offense, but only as an accessory before the fact, scarcely merits mention. Conjunctive language was used and, even if it were not, the Act of June 24, 1939, P. L. 872 §1105, 18 PS §5105, expressly authorizes an indictment as a principal on an information charging defendant as an accessory before the fact to a felony.

After the motion to quash the indictment was denied, counsel for appellant said to the court, "I have just been informed by my client that the defendant desires a change of venue." The motion for continuance and change of venue which followed was based upon allegations that appellant's name "has been spread over the newspapers in this section," that the panel from which the jury was about to be called had heard testimony prejudicial to appellant and that, because of local prejudice, appellant could not receive a fair trial. No effort was made to place upon the record the newspaper accounts and the only specific reference to evidence alleged to have been prejudicial was a statement by counsel that a witness named Russo in *Com. v. Gatto,* 154 Pa. Superior Ct. 25, 34 A. 2d 840, had testified that Gatto had boasted that appellant had a hard time to open his place until he got in touch with him. This statement, even if heard by the jurors, could not be said to be prejudicial in view of the similar evidence subse-

quently produced at the trial of the present case. This is particularly true in view of the fact that, immediately after denying the motion, the trial judge instructed the jury: "...... no matter what you heard in any other case, nothing you have heard has anything to do with the case which you have just been sworn to try." What we said in *Com. v. Celli,* 153 Pa. Superior Ct. 88, 92, 33 A. (2d) 97, 98, on a similar ruling is equally applicable here. See also *Com. v. Peronace,* 328 Pa. 86, 91, 195 A. 57. The matter was largely for the discretion of the trial judge. Act of 1875, March 18, P. L. 30, 19 PS §551; See *Com. v. Schurtz,* 337 Pa. 405, 10 A. (2d) 378.

The next argument is somewhat ingenious. The trial started on two indictments. The additional one, charging pandering, was withdrawn by the commonwealth at the close of its case. The record (the docket entries) merely indicates that the jury were "all duly sworn according to law." We are told in the brief that the jury was sworn only once. It is argued, therefore, that the jury may have been sworn to try the pandering indictment only and that, without having been sworn to try the indictment on which appellant was convicted, the trial was a nullity. That the jury must be sworn is well settled. *Com. v. Robinson,* 317 Pa. 321, 176 A. 908. If the law required the separate administration of an oath on each indictment, there is considerable doubt whether we would not be bound to assume that they had been so sworn—whether we could accept the assertion to the contrary in the brief. *Cathcart v. Com.,* 37 Pa. 108, 110. It is presumed, unless the contrary clearly appears, that the oath was properly administered in accordance with the law. But if the broad common law form of oath (see *Beale v. Com.,* 25 Pa. 11, 17,) was used, we see no reason why separate oaths should be administered for each indictment any more than for each count in every indictment. 1 Chitty

Criminal Law, *248, *253; 2 Hale, Pleas of the Crown, *175; Withers v. Com., 5 S. & R. 59. The essential thing is that the jury be sworn to "well and truly try, and true deliverance make between the Commonwealth and the prisoner at the bar." 1 Chitty, Criminal Law, *551, *554; 2 Hale, Pleas of the Crown, *293. In the absence of proof that some narrower form was used, which may have been applicable only to the indictment subsequently withdrawn, we assume the jury was sworn as to both. See Cathcart v. Com., supra; Beale v. Com., supra.

The Act of May 1, 1935, P. L. 127, §1, 17 PS §1153, empowers the trial judge, when, in his opinion, the trial is likely to be a protracted one, to allow the selection of two additional jurors as alternates where the district attorney or counsel for the defendant, or both, request it. The trial judge, on his own motion, without being requested to do so, directed the selection of two alternates. They were sworn but, although in our opinion it is immaterial, the record indicates they did not participate in the trial and were discharged before the deliberations of the original twelve commenced. Appellant made no objection to the procedure nor did he request the additional peremptory challenge which the Act of 1935 gives him. The contention that the court committed prejudicial error is a complete afterthought. In our opinion, there was no prejudice and the right to the additional challenge was waived by failing to request it. See Com. v. Deyscher, 139 Pa. Superior Ct. 497, 500, 12 A. (2d) 492; Com. v. Antico, 146 Pa. Superior Ct. 293, 313, 22 A. (2d) 204.

The court's charge to the jury was fair and comprehensive. At its close, the judge expressly asked counsel whether they wished anything added, whether there was anything overlooked or whether he had misstated anything. There was no response. The only exception was a general one. At the outset, the jury was instructed

to disregard the pandering indictment which the commonwealth had withdrawn because of lack of evidence to support it. The complaint is now made that the court did not further direct that only the evidence pertaining to the charge of receipt of bawd money could be considered. In our opinion, there is no evidence of pandering which might, in view of the withdrawal of that charge, be regarded as irrelevant and confusing and that no such instruction was necessary or even advisable. And, although the court did not expressly discuss the circumstantial evidence rule, it affirmed a written point submitted by appellant substantially in the language used in *Com. v. Byers,* 45 Pa. Superior Ct. 37.[2] In the light of the circumstances, we think this was adequate.

Appellant objected to the testimony of Betty Kugler on the ground it would tend to incriminate her. It was not contended her testimony was irrelevant or inadmissible on any other ground. Appellant is without standing to complain. *Com. v. De Masi,* 234 Pa. 570, 572, 83 A. 430; compare *Com. v. Tracy,* 137 Pa. Superior Ct. 221, 224, 8 A. (2d) 622.

The judgment is affirmed and defendant is directed to appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.

---

[2] This was even more favorable to appellant than required under our more recent decisions. *Com. v. Marino,* 142 Pa. Superior Ct. 327, 334, 16 A. (2d) 314; *Com. v. Libonati,* 346 Pa. 504, 508, 31 A. (2d) 95; *Com. v. Johnson,* 153 Pa. Superior Ct. 437, 442, 34 A. (2d) 170.