## UNITED STATES v. TOSCANO.
### No. 76, Docket 20744.

Circuit Court of Appeals, Second Circuit.

March 4, 1948.

John R. Hawthorne, of New York City (John J. Dowling, of New York City, of counsel), for defendant-appellant.

J. Vincent Keogh, U. S. Atty., of New York City (Mario Pittoni, Asst. U. S. Atty., of Lynbrook, of counsel), for plaintiff-appellant.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendants Toscano and Casablanca were indicted on three counts under 21 U.S.C.A. § 174 and 26 U.S.C.A. Int.Rev. Code, § 2553, quoted in the margin.[1] Casablanca pleaded guilty and Toscano not guilty.

[1] 21 U.S.C.A. § 174—
"Same; penalty; evidence. If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary

Count One alleged that on or about July 31, 1946, Casablanca and Toscano did fraudulently and knowingly import and bring into the United States, and did assist in so importing and bringing into the United States, a quantity of narcotics, to wit, approximately 2 ounces and 400 grains of heroin, contrary to 21 U.S.C.A. § 174.

Count Two alleged that on or about the foregoing date, in the vicinity of LaGuardia Airport, Casablanca and Toscano did knowingly possess, conceal and facilitate the transportation and concealment of the heroin after the same had been imported into the United States knowing that it had been illegally imported, contrary to 21 U.S.C.A. § 174.

Count Three alleged that on or about such date, in the vicinity of LaGuardia Airport, Casablanca and Toscano did unlawfully have in their possession a quantity of narcotics, to wit, 2400 tablets of morphine sulphate in original stamped packages, without having registered and paid the required taxes, contrary to 26 U.S.C.A. Int.Rev.Code, § 2553. It was conceded on the trial that Toscano did not have a registration for the handling of narcotics and did not pay any taxes with respect thereto, as required by 26 U.S.C.A. Int.Rev.Code, §§ 3221 and 3220. The concession was made with the understanding that it did not involve any admission as to the possession of any narcotics by Toscano.

Toscano was found guilty by a jury on all three counts and has appealed from the sentence which was imposed by the trial judge after the rendition of the verdict.

Ryan, a Treasury Agent in the Narcotic Bureau, testified in substance to the following: At about 9:30 P. M. on July 30, 1946, he went by automobile to the vicinity of the building where Toscano occupied an apartment and parked his car on the opposite side of the street at a point where he was able to observe the entrance. Some time shortly before midnight he saw a car drive up to the vicinity of these premises and saw Toscano, Casablanca, Mrs. Toscano and her daughter, get out of the car. Toscano was carrying his daughter on his shoulder as though she were asleep. Casablanca had nothing in his hands. The four persons then entered the building and Ryan saw the lights go on and the three adults moving about in the living-room of the apartment of the Toscanos in the front section of the second floor.

At about 1:30 A. M. Ryan saw Toscano conversing with his wife for about five minutes and later saw him come out of the building with Casablanca and enter Toscano's car. Just before Casablanca entered the automobile Ryan saw him carrying a brown wrapped package, tied with a white string, approximately 12 inches long, 10 inches wide and 3 inches deep. He testified that Toscano was not carrying anything but was driving the car, with Casablanca sitting next to him. The agent followed Toscano's car until it reached LaGuardia Airport where it was parked to the right

to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

26 U.S.C.A. Int. Rev.Code, § 2553— "Packages—

"(a) General requirement. It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the drugs mentioned in section 2550(a) except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps for any of the aforesaid drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession same may be found; and the possession of any original stamped package containing any of the aforesaid drugs by any person who has not registered and paid special taxes as required by sections 3221 and 3220 shall be prima facie evidence of liability to such special tax.

"(b) Exceptions in case of registered practitioners. * * *"

and across the driveway from the Administration Building. Ryan parked his car closer to that building and saw the defendants get out of their car and pass within 6 or 8 feet of him. Casablanca was still carrying the package described above. As they went into the Administration Building Ryan followed them and saw Casablanca enter waiting-room 7 and 8; as he followed Casablanca he saw Toscano also entering this waiting-room and talking to Casablanca. As Toscano and Casablanca seemed to Ryan to be about to leave the room, Ryan identified himself as a federal officer and asked Casablanca, who was still holding the brown package, what he had in it. He replied: "I don't know what is in the package. I just found it over on the chair there." The agent then turned to Toscano and said: "What are you doing here?" He replied: "I just stopped in for a cup of coffee. I don't know what this is all about." Ryan then asked Casablanca to open the package. The latter made a few ineffectual tugs at the string and then said: "I can't open this package. If you want to see what is in it, you will have to open it up." Ryan opened one end and drew forth an envelope containing heroin. He then arrested both defendants for violation of the narcotic laws and lodged them in detention headquarters. At this time he asked Toscano if he had any further narcotics in his home and Toscano replied that he had not and that Ryan could search there any time that he wished. Thereafter Ryan went to the Toscano apartment and, with the permission of Mrs. Toscano, searched it but found no narcotics.

■ While there was testimony by Toscano and his wife tending to contradict the inference that Toscano had possession of the narcotics, there was sufficient proof that he had the package in his apartment prior to the arrival of Casablanca and before going to the airport to show a violation of the narcotic statutes and justify the verdict. The weight of the evidence and the conflicting inferences which might be drawn from the testimony were questions for the jury. There must, however, be a reversal of the judgment because of statements made by government's counsel in the course of his address to the jury.

■ The defendant contends that government's counsel in summing up argued that the brown package which contained the narcotics might show defendant's fingerprints. It is admitted that the government introduced no evidence to show any fingerprints. While the record does not contain the summation of counsel, it does contain the following discussion by them with the court in connection with motions by the defendant for a mistrial and to strike from the record the alleged statement about fingerprints. This discussion is set forth in the margin.[2] In spite of the absence from the record of the summation of government's counsel, the latter, in referring to the contention that he had said that there were "fingerprints of the defendant on this paper and that they were

---

[2] "Mr. Dowling: I object to this line. There is no such testimony.

"The Court: You introduced in your summation a great deal of argument that had no relation to the specific evidence, and you used it as argument. That is what the District Attorney is doing. He has just as much right as you to do that.

"Mr. Dowling: I move for a mistrial on the Government's statement that his fingerprints—for the withdrawal of a juror and a mistrial—on the Government's statement the fingerprints of this defendant were on this package. There is not a shred of evidence to support that statement.

"The Court: I deny your motion.

"Mr. Dowling: Exception.

"(Mr. Quinn concluded his summation to the jury.)

"Mr. Dowling: If your Honor please, at this time I make a motion to strike from the record the statement made by the District Attorney that there were any fingerprints of the defendant on this paper and that they were prepared to prove by experts there were fingerprints on it.

"Mr. Quinn: I said they felt there might have been.

"The Court: I will charge the jury that the case is to be decided by them on the evidence, and only on the evidence, in connection with, of course, the law of the case as it will be charged.

"Mr. Dowling: In view of your Honor's failure to strike that statement from the record, I now renew my motion for a mistrial, because those statements were made without foundation.

"The Court: That motion is denied."

prepared to prove by experts there were fingerprints on it," admitted that he had said "they felt there might have been." "They" evidently meant the government's experts. This statement, even if provoked by references by defendant's counsel to facts outside of the record, was not legally justified and was in fact a seriously injurious reference to incriminating matter not in the record which might have affected the jury on the basic question of possession. This statement should have been stricken out with specific instructions to the jury that it could not be considered. The motion to strike was denied and the specific matter was not dealt with in the charge. We do not think it was eliminated by the statement of the judge, in connection with his denial of the motion to strike, that the jury was to decide the case only on the evidence.

Doubtless the judge supposed that he had sufficiently dealt with the objection by his general instruction that the jury was to decide the case only on the evidence, and we may assume that the reference to the fingerprints was provoked by irritating irrelevancies on the part of defendant's counsel. But, a reference which might have such serious result to the defendant should have been more thoroughly and conclusively eliminated from the consideration of the jury.

It is unnecessary to discuss any further objections taken by the appellant in the course of the trial.

Judgment reversed.