**UNITED STATES v. SORRENTINO et al.**

**No. 11676 C. D.**

District Court, M. D. Pennsylvania.

June 26, 1948.

Arthur A. Maguire, U. S. Atty., and Joseph P. Brennan, Asst. U. S. Atty., both of Scranton, Pa., for the Government.

Patrick J. Flannery, of Pittston, Pa., Daniel Jenkins, of Scranton, Pa., and Nathan Seeberg, of Buffalo, N. Y., for defendant Vincent Anthony Sorrentino.

William P. Farrell, of Scranton, Pa., for defendant Samuel Riviello.

Joseph Tedesco, Frank J. McDonnell, and Ulric J. McHale, all of Scranton, Pa., for defendant Elizabeth A. Kobli.

Carl Carey, of Scranton, Pa., for defendant Harold E. Schiavo.

MURPHY, District Judge.

Defendant, Vincent Anthony Sorrentino, also known as Jimmy Duffy et al., found guilty by a jury of violation of 18 U.S.C.A. §§ 398, 399,[1] and 18 U.S.C.A. § 88,[2] conspiracy to violate Sections 398 and 399, moves for a new trial.

---

[1] "Section 398. Same; transportation of woman or girl for immoral purposes, or procuring ticket. Any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, in interstate or foreign commerce, or in any Territory or in the District of Columbia, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or who shall knowingly procure or obtain, or cause to be procured or obtained, or aid or assist in procuring or obtaining, any ticket or tickets, or any form of transportation or evidence of the right thereto, to be used by any woman or girl in interstate or foreign commerce, or in any Territory or the District of Columbia, in going to any place for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent or purpose on the part of such person to induce, entice, or compel her to give herself up to the practice of prostitution, or to give herself up to debauchery, or any other immoral practice, whereby any such woman or girl shall be transported in interstate or foreign commerce, or in any Territory or the District of Columbia, shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $5,000, or by imprisonment of not more than five years, or by both such fine and imprisonment, in the discretion of the court. (June 25, 1910, c. 395, § 2, 36 Stat. 825.)

"Section 399. Same; inducing transportation for immoral purposes. Any person who shall knowingly persuade,

As to the substantive offenses, it was charged in Count 1 that defendants caused one Mary Kovacs Riviello to be *transported* from Scranton, Pa., to Buffalo, N.Y., *in interstate commerce* for the *purpose of prostitution* with the *intent and purpose to induce and entice her to become a prostitute;* in Count 2 that defendants *persuaded, induced and enticed* and caused Mary Kovacs Riviello *to go into interstate commerce* as aforesaid with the *intent and purpose that she should engage in the practice of prostitution.* In each of the counts the charge was made that the defendants did the act itself; that they caused it to be done; in Count 1 that they did aid, abet and assist, and in Count 2 aid and assist in the accomplishment of the respective acts charged.

The conspiracy count charged concerted action in violating Sections 398, 399, and set forth four overt acts, the first of which was during the trial withdrawn by the government.

Defendant Riviello, husband of the victim, and defendant Schiavo plead guilty before trial. Riviello testified as a government witness. Defendant Kobli, aunt of the victim, and defendant Sorrentino plead not guilty. Neither of them testified in their own behalf.

After the verdict of guilty was returned and sentence passed defendant Kobli, without having first moved for a new trial, filed an appeal, disposition of which is pending.

Defendant Sorrentino moved for a new trial averring the evidence was not sufficient to support a conviction; and certain alleged errors in the conduct of the trial.

█ In considering the sufficiency of the evidence to sustain the verdict of the jury, this court must take that view of the evidence which is most favorable to the government; must give to the government the benefit of all the inferences which reasonably may be drawn from the evidence; and must refrain from concerning itself with the credibility of witnesses and the weight of the evidence. Affronti v. United States, 8 Cir., 1944, 145 F.2d 3, 5. The verdict of the jury must be sustained if there is substantial evidence to support it. Glasser v. United States, 1942, 315 U.S. 60 at page 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Manton, 2 Cir., 1938, 107 F.2d 834, 839, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012; United States v. Michener, 3 Cir., 1945, 152 F.2d 880, 885; United States v. Toscano, 2 Cir., 1948, 166 F.2d 524.

█ A careful reading of the record in the light of those principles satisfies us that the verdict of the jury must be upheld. It is not necessary to recount the evidence at length. It is enough to say that the jury could have found, and in support of their

---

induce, entice, or coerce, or cause to be persuaded, induced, enticed, or coerced, or aid or assist in persuading, inducing, enticing, or coercing any woman or girl to go from one place to another in interstate or foreign commerce, or in any Territory or the District of Columbia, for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and who shall thereby knowingly cause or aid or assist in causing such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carriers in interstate or foreign commerce, or any Territory or the District of Columbia, shall be deemed guilty of a felony and on con-viction thereof shall be punished by a fine of not more than $5,000, or by imprisonment for a term not exceeding five years or by both such fine and imprisonment, in the discretion of the court. (June 25, 1910, c. 395, § 3, 36 Stat. 825.)"

2 "Section 88. (Criminal Code, section 37.) Conspiring to commit offense against United States. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both. (R.S. § 5440; May 17, 1879, c. 8, 21 Stat. 4; Mar. 4, 1909, c. 321, § 37, 35 Stat. 1096.)"

verdict, we may properly assume, did find the following:

In the Spring of 1946, defendant Sorrentino came from Buffalo to Scranton, met with and talked to defendant Kobli. About that time defendant Riviello at Kobli's apartment in Scranton met and became acquainted with Mary Kovacs, an eighteen year old unmarried girl, a niece of Kobli, who was then living with her aunt and who had come to Scranton from her home in Northampton to give birth to a child.

Shortly before May 10, 1947, Riviello and Kobli talked about putting Mary into a house of prostitution. Kobli told Riviello, a young G. I., age twenty-two, that Mary would make a good prostitute and make a lot of money. Kobli helped in the preparations for the marriage between Riviello and Mary which occurred on May 10. Early Monday morning, May 12, Riviello, Schiavo and Mary left Kobli's apartment and shortly thereafter travelled by Greyhound bus, an interstate common carrier, from Scranton, Pa., to Buffalo, N.Y., where they met Sorrentino. Within a few days Sorrentino, unable to place Mary in a brothel in Buffalo, arranged to send her to one in Utica, N. Y., where for several weeks she plied her trade, turning over from time to time her share of her earnings to Sorrentino.

Before leaving for Buffalo the victim was instructed on Sunday afternoon by Schiavo and on Sunday evening by Kobli as to methods, dress and other conduct in the work of a prostitute. She was dressed by Kobli in the apparel of the calling, admired and told she would make a lot of money, and thereafter given by Kobli a supply of clothes which she should use in her work. She was advised by Kobli as to what to do if she was questioned, to change her name and age, and other sordid details which are spelled out in the record.

Kobli on Sunday night before their departure told Riviello that she had been in touch with Sorrentino and talked to him; that she told him that the victim and Riviello were going to Buffalo. She told the victim and Riviello where they could find Sorrentino, giving them two Buffalo addresses and a phone number; that Sorrentino had good connections, knew a lot of places where Mary could go to work in a brothel and that he would tell them where to go; that when they met Sorrentino they were to tell him that she sent them down; Riviello was to say that he was "Sammy from Scranton." When Mary was leaving Kobli's last words were, "Behave yourself * * * and do everything you are told to do."

As soon as Riviello met Sorrentino in Buffalo the latter immediately asked, "Are you Sammy from Scranton? Is this Betty Kobli's niece?", notwithstanding the fact that neither the victim nor Riviello had ever seen him before, or been otherwise introduced.

The evidence showed an incompleted call by Kobli in an attempt to reach Riviello at Buffalo, and later a completed call after Riviello had left Buffalo when Kobli talked to her niece, while Sorrentino stood two or three feet away, at which time Kobli said, "How is Jimmy Duffy treating you * * * He is a good fellow. You don't have to be afraid * * * when you are to go to the place wherever you are write and let me know."

Various witnesses testified as to corroborative details, utility records of the phone call on Tuesday, hotel registrations of the victim, Riviello and Schiavo in Buffalo, and of the victim and Sorrentino in Buffalo and Utica.

■ A defendant is liable where as part of the inducement he gave assurance of a place and a means to practice. Schrader v. United States, 8 Cir., 1938, 94 F.2d 926.

From a study of the record and a thorough consideration of the arguments and briefs of counsel, we hold that there was ample substantial testimony supporting no other reasonable hypothesis but that of guilt of the defendant Sorrentino on all charges. In that respect the verdict of the jury is well sustained.

Unless there is some error in the conduct of the trial the verdict of the jury must stand.

■ Throughout the trial there were objections continuously as to the admissibility of the declarations of the respective defendants in the absence of some or all of

'the other defendants. We admitted much evidence on the theory of agency. Cr.Code, § 332, 18 U.S.C.A. § 550; see Morgan v. United States, 5 Cir., 1945, 149 F.2d 185, certiorari denied 326 U.S. 731, 66 S.Ct. 39, 90 L.Ed. 435; Backun v. United States, 4 Cir., 1940, 112 F.2d 635, 637; Gordon v. United States, 6 Cir., 1947, 164 F.2d 855 at 860; United States v. Olweiss, 2 Cir., 1943, 138 F.2d 798, an opinion by Learned Hand, J., at page 800, " * * * any evidence admissible against * * * (one defendant) was admissible against * * * (the other defendants), so far as it consisted of conduct in furtherance of the joint venture in which all three were engaged. The notion that the competency of the declarations of a confederate is confined to prosecutions for conspiracy has not the slightest basis; their admission does not depend upon the indictment, but is merely an incident of the general principle of agency that the acts of any agent, within the scope of his authority, are competent against his principal." United States v. Perillo, 2 Cir., 1947, 164 F.2d 645, 647, " * * * proof of agency made the agent's representations admissible against his principal in this criminal prosecution just as it would have in a civil action." Garber v. United States, 6 Cir., 1944, 145 F.2d 966, 969, "The fact that the case at bar is not a formal conspiracy case does not affect the applicability of the principle that circumstantial evidence which connects the defendant with the criminal transactions of his known agent may be received and considered; for, as was pointed out in Cossack v. United States, 9 Cir., 82 F.2d 214, 216, 'the common object of persons associated for illegal purposes forms part of the res gestæ, and acts done with reference to such object are admissible, though no conspiracy is charged.' See, also, Lee Dip v. United States, 92 F.2d 802, 803, and Belden v. United States, 223 F. 726, 730, from the same circuit."

Defendant avers error in that the government attorney in opening described Kobli as a prostitute and later proved that she was a prostitute and at times a madam of a brothel. The questions merge into one of admissibility of evidence under the circumstances in a case of this kind. United States v. Monjar, 3 Cir., 1944, 147 F.2d 916, 924.

The testimony was restricted in its effect to defendant Kobli. There was no objection on Sorrentino's behalf to the remark when made and none to the specific testimony when received, although the record shows objection by motion to strike. We might therefore dismiss this assignment for this reason alone. D'Allessandro v. United States, 3 Cir., 1937, 90 F.2d 640; Lawrence v. United States, 9 Cir., 1947, 162 F.2d 156, 158.

■ Apart from the direct evidence the jury could easily infer from the conduct of Kobli furnishing instructions, information, her knowledge of Sorrentino's connections, furnishing work clothes to ply the trade, fear of a police raid on her apartment, that Kobli had familiarity with the calling. Certainly the terms painted a picture of defendant Kobli hardly more derogatory than the evidence did. We permitted evidence as to her being a prostitute and a madam as evidence from which the jury might infer her intent and purpose in her conduct in connection with the charge of inducing her niece to go into interstate commerce, and conspiracy. See Note 167 A.L.R. 565 at 625, "It has been held, in prosecutions charging violation of the Mann White Slave Act, that evidence is admissible to show other similar offenses committed by the defendant, whether with the same female or with another. Kinser v. United States, 8 Cir., 1916, 231 F. 856; Baish v. United States, 10 Cir., 1937, 90 F. 2d 988; Neff v. United States, 8 Cir., 1939, 105 F.2d 688; Tedesco v. United States, 9 Cir., 1941, 118 F.2d 737; Cohen v. United States, 5 Cir., 1941, 120 F.2d 139; United States v. Pape, 2 Cir., 1944, 144 F.2d 778; writ of certiorari denied in, 1944, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602." See also 2 Wigmore on Evidence, 3rd Ed., Sections 357, 360; Lawrence v. United States, supra; Commonwealth v. Gatto, 1943, 154 Pa. Super. 25, 34 A.2d 840; Commonwealth v. Vallone, 1943, 151 Pa.Super. 431, 441, 30 A. 2d 229; reversed on other grounds 347 Pa. 419, 32 A.2d 889; United States v. Krulewitch, 2 Cir., 1944, 145 F.2d 76, 156 A.L.R. 337 (defendant's relations with other prostitutes).

"Obviously an accused will not himself disclose his intent. Hence it is well settled

that it may be discovered elsewhere, as from evidence of other similar activities of the accused * * *." United States v. Pape, supra, 2 Cir., 144 F.2d 778, at 781. "Where the intent of the party is matter in issue, it has always been deemed allowable, * * * to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment. * * * 'Relevant and competent evidence of guilt is not rendered inadmissible because it also tends to prove that the defendant committed another offense.'" Tedesco v. United States, supra, 9 Cir., 1941, 118 F.2d 737, at 740. Of course, the purpose or intent may be proved by circumstantial evidence. Id., 118 F.2d at 741. Intent, motive or purpose necessary for the establishment of a crime may rest in inference. United States v. Reginelli, 3 Cir., 1943, 133 F.2d 595. The purpose for which the interstate transportation is enlisted may be inferred from the conduct of the parties within a reasonable time before and after the transportation. Id., 133 F.2d at 598. So too we add as to agency and conspiracy.

■■ The admissibility of other offenses is determined by deciding whether what it will contribute rationally to a solution of the problem is more than matched by the chance that it will divert the jury from the facts which should control their verdict. In this case we felt it was pertinent and in view of the other evidence it could not divert the attention of the jury from the essential facts. See United States v. Krulewitch, 2 Cir., supra, 145 F.2d 76 at 80. Similarly in United States v. Reed, 2 Cir., 1938, 96 F.2d 785, certiorari denied 305 U.S. 612, 59 S.Ct. 71, 83 L.Ed. 399, evidence was received to show defendant conducted a house of prostitution, as tending to show intent and purpose in shipping girls to other places.

The evidence was also admissible to corroborate Riviello, an alleged accomplice.[3] Wilson v. United States, 1914, 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728.

■ We admitted evidence of the conduct of Sorrentino after arrival of the victim in Buffalo. The gist or gravamen of the offense was the interstate transportation and inducing the victim to go into interstate commerce for the purpose of prostitution. The offense is complete the moment the victim has been transported across state lines with the immoral purpose or intent in the minds of the persons responsible. Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331; Wilson v. United States, Neff v. United States, supra. In considering the evidence however and in reaching their conclusion the jury were entitled to consider what the victim and Sorrentino did after she arrived at her destination, as well as the character of the house to which the victim had been brought as tending to prove the intent and purpose of defendant in bringing her there. See Pine v. United States, 5 Cir., 1943, 135 F.2d 353, 357; Kelly v. United States, 9 Cir., 1924, 297 F. 212, 213; Wilson v. United States, Tedesco v. United States, Neff v. United States, Reginelli v. United States, supra.

■ Defendant raises the question of the use of aliases in the indictment, all but one of which was proved; the testimony showed one additional alias, i. e. "Jimmy Rogers." D'Allessandro v. United States, supra, and United States v. Monroe, 2 Cir., 1948, 164 F.2d 471, do not apply here. All names were read to the jury during the trial without objection. No question as to them was raised until after the jury retired and requested to see the indictment. We previously told the jury the contents of the indictment were not evidence; that they should consider only the evidence produced in court.

■ The limits of the cross examination of Rose Brown were within the discretion of the court. Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. The questions first asked on cross examination were not answered. The other questions were permissible to show interest and bias. See Lawrence v. United States, supra; Bracey v. United States,

---

[3] The victim was not an accomplice. Gebardi v. United States, 1932, 287 U.S.
112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370.

1944, 79 U.S.App.D.C. 29, 142 F.2d 85, 89. The order of proof is discretionary with the court. Baish v. United States, supra.

■ Merely because the evidence failed to show what if any share of the proceeds were given by Sorrentino to the other defendants would not prevent a conviction. Cf. United States v. Reginelli, supra.

■ There was no error in requiring a defendant to stand for identification purposes. Swingle v. United States, 10 Cir., 1945, 151 F.2d 512; Holt v. United States, 218 U.S. 245, 253, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann.Cas. 1138.

■ The crimes defined in Sections 398, 399 and 88 are separate and distinct. Roark v. United States, 8 Cir., 1927, 17 F.2d 570; United States v. Saledonis, 2 Cir., 1937, 93 F.2d 302. It is fundamental that the additional count of conspiracy might lay in addition to the substantive charge. Pinkerton v. United States, 1946, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489.

In our charge to the jury we read the counts in the indictment and the provisions of the respective sections of the statutes involved, and by way of explanation we advised the jury that defendant Sorrentino could not be found guilty unless defendants Kobli and Sorrentino acted in order to make the transportation possible and to have the victim go to Buffalo; that they must have acted to induce her to go into interstate commerce to be a prostitute before the act of her actually going into interstate commerce; that Sorrentino was not being tried for what he did after the victim's arrival in Buffalo. We explained the difference between the Federal and State offenses. Shama v. United States, 8 Cir., 1938, 94 F.2d 1, certiorari denied 304 U.S. 568, 58 S.Ct. 1037, 82 L.Ed. 1533; Malaga v. United States, 1 Cir., 1932, 57 F.2d 822. No additional requests for charge were made on behalf of defendant Sorrentino. Exception was made by counsel for defendant Kobli and joined in by counsel for defendant Sorrentino because the court had allegedly placed undue emphasis on Count 2, i. e., the charge of inducing to go into interstate commerce to become a prostitute. The part of the charge as to the testimony of accomplices was in the usual form as to caution and corroboration. No additional requests were made in this regard. See Berger v. United States, 295 U.S. 78, 81, 82, 55 S.Ct. 629, 79 L.Ed. 1314, interpreting Section 269 of the Judicial Code, as amended. 28 U.S.C.A. § 391.

We did not, as defendant contends, at any time state that the conspiracy had been proved. That was obviously a question for the determination of the jury and was left for them to decide. We feel that looking at the charge as a whole it will be found to be a correct and adequate statement of the law. In United States v. Levy, 3 Cir., 1946, 153 F.2d 995, 998, it is stated that " * * * it is a court's duty to charge a jury on all essential questions of law, whether requested or not. * * * A trial court's judgment, * * * will rarely be reversed for failure to give instructions, in the absence of a seasonable request or exception. * * *"

As we pointed out above, there were no such requests. The charge in our judgment was fair, impartial and adequate.

Defendant has stated several other reasons in support of his motion for new trial. We have considered all of them and feel that they are so obviously without merit we see no need to discuss them or to cite authorities in support of our position.

We find nothing in the defendant's assignment of errors warranting us in disturbing the verdict of the jury. An order will therefore be handed down this date denying defendant's motion for new trial.