**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Herschel DIMSDALE,
Defendant-Appellant.**

**No. 26310.**

United States Court of Appeals
Fifth Circuit.

April 29, 1969.

Thomas M. Baumer, Jacksonville, Fla., (court-appointed) for defendant-appellant.

Edward F. Boardman, U. S. Atty., Middle District of Florida, Samuel S. Forman, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON, Judge of the Court of Claims.*

* Sitting by designation as a member of this panel.

COLEMAN, Circuit Judge:

The Grand Jury for the Middle District of Florida, Jacksonville Division, charged that on or about September 29, 1967, Charles Herschel Dimsdale knowingly transported and caused to be transported in interstate commerce from Dothan, Alabama, to Jacksonville, Florida, one Patsy Ruth Weems, for the purpose of prostitution, debauchery and other immoral purposes, Title 18 U.S.C. § 2421. The first jury failed to convict, but upon the second trial a guilty verdict resulted, followed by a sentence of five years imprisonment. We affirm.

A first reading of the record and the initial consideration of briefs and argument of counsel raised considerable doubt of the validity of this conviction.

■ As to the alleged interstate transportation and the purpose of it, the proof depended on the testimony of Patsy Ruth Weems. She registered her complaint with an agent of the Federal Bureau of Investigation while in jail on the occasion of her fourth arrest for prostitution. Her first written statement to the F.B.I. failed altogether to make a case. In fact, she there stated in writing that she came from Dothan to Jacksonville with Dimsdale in order to obtain employment as a dancer. Her testimony on the first trial as to the essential elements of the corpus delicti was meager and sketchy. At the second trial, however, Mrs. Weems gave testimony in depth, vigorously fortified at all points. She said repeatedly and extensively that the illegal purpose of the transportation was agreed upon before the parties set out for Jacksonville. The resolution of her credibility was for the jury. The jury believed this testimony, or it would not have convicted. The prior inadequacies and contradictions in the testimony must have been discounted on the likelihood that Mrs. Weems began as a reluctant witness against her former associate and only at last came around to telling the whole truth.

The books are filled with cases dealing with Mann Act prosecutions. We therefore abstain from any protracted disquisition on the law. We shall relate only so much of the facts as are necessary to a decision of the issues raised by the appeal.

Mrs. Weems, thirty-one years old and the divorced mother of three children, was a waitress and a bar maid in a restaurant in Dothan. Dimsdale came from Jacksonville to Dothan ostensibly to be employed with a traveling carnival. A mutual friend introduced him to Mrs. Weems. She testified that over a period of three or four nights Dimsdale persuaded her to go to Jacksonville to engage in prostitution. One night, after she got off work, the two of them left for Jacksonville. They traveled in Mrs. Weems' automobile and she paid all the expenses of the trip. Dimsdale had no money at all but he did drive the automobile.

An unusual facet of the matter was that before departing Dothan Mrs. Weems had already acquired an airline ticket for a trip from Dothan to New Orleans to visit her father, whom she had not seen for years and whose whereabouts she had only recently learned. Therefore, it was understood before leaving for Jacksonville that Mrs. Weems would continue on to New Orleans although she would have to get the ticket revised. It was further understood that she would leave her automobile in Jacksonville and would return there upon completing the New Orleans visit.

As a matter of fact, she did not do this; from New Orleans she went by plane to Dothan. While in Dothan, she received a call from Dimsdale and forthwith went to Jacksonville for the second time. She explained this on the basis that in any event she had to return to Jacksonville to retrieve her automobile.

No acts of prostitution were committed during her first stop in Jacksonville. The next day after her second trip from Dothan, acting under the tutelage and directions of Dimsdale, she went to a hotel in Jacksonville, where, the first night she earned $150 from various acts of prostitution. The second night, she

did likewise. Thereafter, the record is replete with similar activities in Birmingham; Augusta, Georgia; Columbia, South Carolina; and back to Jacksonville. Dimsdale did not accompany her on the journeys out of town. In fact, upon Mrs. Weems' return from Birmingham she found out that he had gone to Orlando with another woman. She telephoned him and he promptly returned to Jacksonville.

She testified that on the occasion of her first three arrests in Jacksonville she was promptly bailed out of jail, but bail was not furnished the fourth time. After languishing in jail for sometime she decided that the only way to get out and return to Dothan, where her three children lived with their grandmother, was to call the F.B.I.

The appellant assigns two grounds for reversal: (1) The evidence was not sufficient to support the jury's finding that the appellant, rather than the woman, transported the couple in interstate commerce; (2) The trial court erred in charging the jury that it could find the appellant guilty if it found that the prostitution was one of the purposes of the interstate travel.

I. Was the evidence sufficient?

■ By the very terms of the statute there are two indispensable ingredients to a valid conviction. First, there must be transportation in interstate commerce; second, that transportation must be for the prohibited purpose, Ellis v. United States, 8 Cir., 1943, 138 F.2d 612; United States v. McConney, 2 Cir., 1964, 329 F.2d 467; Stewart v. United States, 9 Cir., 1962, 311 F.2d 109.

■ There can be no doubt that appellant was guilty of the actual transportation. While the woman furnished the vehicle and the funds, Dimsdale drove the car, 18 U.S.C., § 2. Under the statute a defendant cannot escape if he caused the transportation or aided and assisted in the transportation for the forbidden purpose, Wagner v. United States, 5 Cir., 1949, 171 F.2d 354, cert. denied 337 U.S. 944, 69 S.Ct. 1499, 93 L.Ed. 1747 (1949);

Schrader v. United States, 8 Cir., 1938, 94 F.2d 926.

■ The transportation is complete the moment the woman has been transported across the state line with the immoral purpose or intent in the mind of the person responsible for her transportation, and the immoral conduct and relations of the parties are, in no sense, elements of the offense, Neff v. United States, C.C.A., 8 Cir., 1939, 105 F.2d 688; Reamer v. United States, 8 Cir., 1963, 318 F.2d 43, cert. denied 375 U.S. 869, 84 S.Ct. 129, 11 L.Ed.2d 95 (1963); Wiley v. United States, 8 Cir., 1958, 257 F.2d 900; Lindsey v. United States, 5 Cir., 1955, 227 F.2d 113, cert. denied 350 U.S. 1008, 76 S.Ct. 653, 100 L.Ed. 869 (1956). See, also, United States v. Sorrentino, D.C., Pa., 1948, 78 F.Supp. 425, affirmed 175 F.2d 721, 3 Cir., 1949, cert. denied 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532, rehearing denied 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551 (1949).

■ Although Dothan was only a few miles from the border, if the prohibited purpose existed before the participants crossed the state line, which the proof showed to have been the case, whether or not Mrs. Weems engaged in prostitution after she reached the state is immaterial, Cholakos v. United States, 6 Cir., 1924, 2 F.2d 447, cert. denied 267 U.S. 604, 45 S.Ct. 464, 69 L.Ed. 809; Rizzo v. United States, 3 Cir., 1921, 275 F. 51.

■ The real object of the trip is the controlling consideration, United States v. Jamerson, D.C., 8 Cir., 1944, 60 F.Supp. 281. See, also, Long v. United States, 10 Cir., 1947, 160 F.2d 706; Ellis v. United States, supra.

■ Of course, an immoral purpose first conceived at the end of an interstate journey is not sufficient, Shama v. United States, 8 Cir., 1938, 94 F.2d 1, cert. denied 304 U.S. 568, 58 S.Ct. 1037, 82 L.Ed. 1533, but the purpose may be inferred from the conduct of the parties within a reasonable time before and after transportation, United States v. Reginelli, 3 Cir., 1943, 133 F.2d 595, cert.

denied 318 U.S. 783, 63 S.Ct. 856, 87 L. Ed. 1150 (1943).

There is a troublesome aspect of the *purpose requirement* in this case. It is undisputed from any source in this record that when Dimsdale and Mrs. Weems left Dothan for Jacksonville in her automobile they both knew that there was to be no prostitution at the close of that particular journey. Mrs. Weems was immediately to commence another interstate journey of her own, independently planned and financed by her. Thus it can be argued that the prohibited purpose could not have been involved because it was known at the outset that no prostitution was intended at the close of the trip charged in the indictment. Dimsdale took no part whatever in the transportation from Jacksonville to New Orleans to Dothan to Jacksonville. This Mrs. Weems did by her own arrangement, of her own accord, although at his solicitation, and by the use of public facilities which she paid for.

Under ordinary circumstances this argument might very well be sustained. We are quite certain that if there was no prohibited purpose in one completed interstate journey then such could not later be supplied by a subsequent one in which a defendant did not participate.

■ Actually, however, that is not really the situation in this case. The distinguishing factor is that Mrs. Weems had to leave her car in Jacksonville and it was agreed that she would return there as soon as she could conclude the business in New Orleans. She did return, as originally planned, although not by the route originally agreed upon. The presence of her car in Jacksonville was a pretty good guarantee that she would return. It was not likely that a person of her means would abandon it or would be financially able to send for it. We, therefore, regard the trip around the circuit as one journey, especially since the participants clearly regarded it as such and had so planned it before leaving Dothan. It is true that the indictment charged only the trip from Dothan to Jacksonville on September 29 but we see nothing fatally defective about that because this was the only leg of the journey in which Dimsdale took part. Moreover, since the jury found as it did, there is no doubt that the trip to Jacksonville accomplished its unlawful purpose in a direct chain of sequential, planned events.

We, therefore, hold that the evidence was sufficient to support the conviction.

## II. The Challenged Instruction

■ Along with the other instructions, the District Judge charged the jury as follows:

"[A] mere incidental intention on the part of the transporter to engage in immoral practices during or at the conclusion of the journey is insufficient to support a verdict of guilty, and does not constitute a violation of the statute under which the Defendant has been charged. If the reason or reasons motivating the transportation are unrelated to the prostitution or debauchery, you are to find the Defendant not guilty.

"In order to establish that interstate transportation or travel was for an immoral purpose, the evidence in the case need not show that prostitution was the only purpose of the transportation or travel. A person may have several different motives or reasons for doing a particular act, such as traveling, and all such reasons may, in varying degrees, prompt the act of making the particular trip or journey. Proof of the immoral purpose is sufficient, if the evidence in the case establishes beyond a reasonable doubt that at the time the woman or girl designated in the indictment crossed a state line from one state into another state, prostitution was one of the purposes of such interstate travel."

The appellant vigorously urges that the jury should have been told that the evidence had to show that prostitution was one of the "dominant, efficient, or com-

pelling purposes" of the interstate travel. In fact, relying on Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944) the District Judge at the first trial did charge in terms of dominant purpose, and there was a hung jury. This, therefore, is a very significant point.

Under the facts of this case, however, we are of the opinion that the charge as given was not erroneous. *Mortensen* was decided on entirely different facts. There the Supreme Court held that "[t]he *sole purpose* of the journey from beginning to end was to provide innocent recreation and a holiday for petitioners and the two girls. It was a complete break or interlude in the operation of petitioners' house of ill fame and was entirely disassociated therefrom. * * What Congress has outlawed by the Mann Act, however, is the use of interstate commerce as a calculated means for effectuating sexual immorality".

In the instant case there is no evidence of any motive on the part of Dimsdale but to involve the woman in prostitution, much less one which possibly might have been dominant.[1] True, Mrs. Weems intended to go to New Orleans but that could not have been a motive for traveling to Jacksonville, which was in the opposite direction and hundreds of miles farther. She already held a Dothan to New Orleans ticket. Even so, the Court told the jury that there had to be more than an "incidental intention to engage in immoral practices during or at the conclusion of the journey". This was not a case where more than one intent existed. Where more than one purpose is involved, including lawful ones, the cases in that area must be consulted. It was not necessary here.

The Judgment of the District Court is Affirmed.

1. One witness testified that Dimsdale asked him on one occasion about employing a woman, not identified, of the same age as Mrs. Weems, as a go-go dancer. He did not see Mrs. Weems, did not know whom Dimsdale was talking about, and laughed at the idea of employing a thirty year old woman as a go-go dancer. From his testimony it would appear that go-go dancers generally must be much younger than age thirty.